1834.

Vail
v.
Vail.

## E. A. Vail and wife v. H. Vail and others.

Where the testator died possessed of a large real and personal estate, leaving a widow and six children, some of whom were minors, and by his will, after giving various pecuniary legacies to his widow and children and others, directed his executors to provide for the support and education of his minor children, out of the income of his real and personal estate, until they arrived at the age of twenty-one or married; and also directed his executors to invest the residue of his personal estate in real property, or in bonds and mortgages, or other permanent securities, until the death of the widow, and until the youngest child arrived at the age of twenty-five, and then to sell the real estate so purchased, together with that of which the testator died seized, and to divide all that then remained of the estate among the six children, or their issue, and to invest the share of each child in the name of the executors, and to pay over the income thereof to the children respectively for life; and that upon the death of the children, their several shares should go to their issue, and if any child died without issue, the share of such child should go to the other children or their issue; *Held,* that the executors took an estate for years in the real property of the testator, by implication, to enable them to receive the rents and profits thereof, for the support and education of the minor children, until the youngest arrived at the age of twenty-one or married; but that there was a resulting trust, in favor of the heirs at law of the testator, for so much of the rents and profits as were not wanted for that purpose; and that the reversion in the real estate, after the expiration of that term, descended to the heirs at law, subject to the power in trust to the executors to sell after the death of the widow and after the youngest child arrived at the age of twenty-five; *Held also,* that there was an implied trust of accumulation of the interest or income of the personal estate, by the executors, until the time appointed for the division of the property among the children, which trust of accumulation was void under the provisions of the revised statutes; and that such interest or income belonged to the widow and children of the testator, as property not legally disposed of by his will.

Where a testator bequeaths to his children a contingent interest for life, in the income which may accrue from a residuary fund, after the happening of a particular event, they are not entitled, under the will, to the income of the fund previous to that time; and no valid bequest being made of such previous income, it must be distributed as in cases of intestacy.

THE bill in this cause was filed to obtain the decision and direction of the court as to the construction of certain parts of the will of Laurent Salles, deceased. The testator died in 1833, leaving property of the value of about twelve hundred thousand dollars, one hundred thousand of which was in real

January 28.

estate, and the residue was in stocks, bonds and mortgages and other personal property. The testator left a widow, about 47 years of age, and six children, the eldest of which was 26 years of age and the youngest fourteen. By his will, which was made after the revised statutes went into operation, the testator bequeathed about $15,000, in legacies, to some distant relatives and friends and to charitable objects. He then directed $25,000 of his personal estate, to be invested for the use of his wife during her life or widowhood, with liberty to her, if she died his widow, to dispose of the same by will among his children or grand children ; and if she died without making such disposition, then that the principal, upon her death, should sink into the general residue of his estate. He also directed $10,000 to be invested for the use of his daughter, Mrs. Tonnele, for life, with remainder to her two children, or the survivor of them ; and if they both died in the life time of their mother, then to such persons as she might by will appoint, or in default of such appointment, that the principal sum should sink into the general residue. The testator also ordered the executors, from the income of his estate, either real or personal, to pay and appropriate such sums as might be necessary for the support and education of his minor children, until they should respectively arrive at the age of twenty-one or be married. He also gave to each of his five daughters, a legacy of $25,000 ; the legacies to the married daughters to be paid immediately, and those to the other three to be paid at the age of twenty-one, or sooner, if they married with the consent of the executors. He also gave to each daughter, a similar legacy of $25,000, payable when they should respectively attain the age of 25 years. These several legacies were to be paid to the issue of such of the daughters as should die before the same became payable, provided they had any issue living at the time when such payment was to be made ; and if they had no such issue, the legacy was to fall into the general residue. The testator also gave to his son three legacies, of $25,000 each, the first payable when he was twenty-one, the second when he was twenty-five, and the third when he was twenty-seven. The executors were directed to invest the whole of the personal estate of the testator, except so

much thereof as might be necessary to fulfil the requisitions of the will, in the name of the executors, for the use and benefit of the testator's children, in the purchase of real estate, or in bonds and mortgages, or in certain other permanent securities specified in the will. And when the youngest child arrived at the age of twenty-five, or as soon thereafter as the widow should die, and not before, the executors were directed to sell all the real estate of which the testator died seized, and also that which should have been purchased by them, and then to divide all that remained of his estate among the six children and their issue, in such proportions as to equalize, with interest, the previous advances which should have been made by the executors, as directed in the will; so as to give to each child an equal benefit from his estate. This distribution, however, was to be made without reference to the legacy of $10,000 to Mrs. Tonnele and her children, or to any disposition which the widow might make of the principal of the $25,000 legacy to her. The testator further directed that the several shares so apportioned should be invested in the name of the executors, as trustees for his children respectively, and that the income should be paid to the children for life. And he directed that the portion of each child, after his or her death, should go to the issue of such child, if any there was, and if none, then to be divided among the surviving children and the issue of such as had died, *per stirpes*; or in such other manner as the child dying without issue might by will direct.

By the bill of the complainants, it was claimed that each of the children was entitled to one sixth of the rents and profits of the real estate of which the testator died seized, subject to their mother's right of dower therein; and to one sixth of the income of the residue of the testator's personal estate, after satisfying the several legacies. The answer of the defendants admitted all the material facts stated in the bill, and particularly that the complainants, in behalf of Mrs. Vail, who was one of the children of the testator, claimed one sixth of the income of the real estate and of the general residue of the personal estate, and had applied to the executors for the payment of such share. But the defendants stated, in their answer, that being advised that the legality of that claim was

1834.

Vail
v.
Vail.

doubtful, and that they could not safely admit the same, or pay over such income without the direction of the court, they had declined to comply with the complainants' request. They therefore submitted the several questions arising under the will, to the decision and direction of the court, as matters of law ; and submitted to abide such order and decree as might be made in the premises.

*G. Clark & David B. Ogden*, for the complainants. We contend, 1. That there is by the will no disposition of the rents and profits of the testator's estate, from his decease until the youngest child attains twenty-five years and the decease of the widow, and that they of course go to the heirs, as so much estate undisposed of; and 2. That if there is any direction in the will that the rents and profits shall accumulate, such direction, so far as it relates to the complainant Julia Vail, is invalid and void, by the statute.

As to the real estate : The will makes no disposition of the real estate, nor of the rents and profits thereof, until the period when the youngest child shall have attained twenty-five years, and until the decease of the testator's wife. It is a well settled rule of law, that a freehold estate cannot be in abeyance by the act of a party. (1 *Com. Dig.* 181, *tit. Abeyance.* 1 *Preston on Estates*, 216.) If not devised, or not properly devised, it descends to the heir. (*Powell on Devises*, 412. *Cases temp. Talbot*, 44.) A devise that executors shall sell, does not amount to a disposition. (4 *Com. Dig. tit. Estates by Devise, N. 2. Powell on Devises*, 221.) And in such case, the lands descend to the heir till sale, and he shall have the rents and profits. (4 *Bac. Abr.* 281. *Noy's Max.* 160. *Co. Litt.* 236, *note.*) It cannot be urged, in this case, that there is a devise of the real estate by implication. Implication in a will cannot prevail, unless necessary. ( 5 *Ves.* 801.) And conjecture must not be mistaken for implication; necessary implication does not mean natural necessity, but so strong a probability of intention that an intention contrary to that which is imputed to the testator cannot be supposed. (1 *Ves. & Beam.* 486.) And the implication must be plain, and not merely a possible or probable one ; for the title of the heir at law being

plain and obvious, no words in a will ought to be construed in such a manner as to defeat it, if they can have any other signification. ( 1 *Ves. jun.* 561. 1 *Swinburne on Wills*, 353. *Id.* 146, *note, Powell & Weeks' edition.* 6 *Cruise*, 159.) It is very doubtful whether, under our statute, there can in any case be a devise for accumulation by mere implication. The statute contemplates an express direction. ( 1 *R. S.* 726.) There is no way to exclude an heir, but by giving to some one else ; for he will take what is not disposed of, even against the intention. ( 2 *Ves.* 225.) Neither an heir nor next of kin can be barred by any thing but a disposition. (3 *Ves.* 493.) Plain words of gift, or necessary implication are required to exclude an heir at law. (3 *Ves.* 92. 1 *Ball & Beatty*, 541.) And a legacy to an heir at law is not sufficient to defeat his claim to the undisposed real estate. (1 *Ball & Beatty*, 543.) Even if the power given to the executors to sell the real estate at a future period, could be construed into a devise to them in trust, yet, unless they were also expressly empowered to receive the rents and profits, the devise would vest no estate in the trustees ; and the land would descend to the heirs, subject to the execution of the power to the executors to sell. (1 *R. S.* 729, § 56. 2 *Powell on Devises,* 32 *and* 33, *ed. of* 1827.) When an express trust is created, every estate and interest not embraced in the trust and not otherwise disposed of, shall revert to, or remain in the person creating the trust, or his heirs, as a legal estate. (1 *R. S.* 729, § 62.) In this case, the testator has created an express trust in his executors to invest his personal estate in a certain mode, and at a specified time to sell the whole estate, and allot the proceeds among his six children. If the executors should sue the tenants for the rent, they could not recover, not being entitled to the reversion. (3 *Bac. Abr.* 62.) Whenever there is a devise upon a future contingency, and no intermediate disposition of the rents and profits, there is a resulting trust to the heir. (3 *Ves.* 725. 1 *Ves. jun.* 44. 11 *Ves.* 87. 18 *Id.* 368. *Fearne*, 434, *Powell's edition.*) When, in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation, or of the ownership, during the continuance of which the rents

and profits shall be undisposed of, and no valid direction for accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate. (1 *R. S.* 726, § 40.) Whether regard is had, therefore, to the rules of the common law, or to the provision of our own statute, the rents and profits in this case must go to the heirs at law.

As to the personal estate. The testator has directed his executors to invest all his personal property in certain specified securities, for the use and benefit of his children ; and has given no other directions whatever, as to the disposition of the income of his personal estate, until the period of final allotment. This clause gives the children a vested interest in the personal estate, (1 *R. S.* 728, § 49,) and a right to the income thereof, unless there is a valid direction in the will that such income shall accumulate during the period mentioned. It will be conceded that there is no express direction in the will that the income shall accumulate. The words used by the testator, " for the use and benefit of my children," imply an immediate use, and not a future use at a very remote period. The testator, by giving to each of his children a legacy of $50,000, showed he was not afraid to entrust them with a larger income. It is a well settled rule of law, that in the construction of wills, the testator is to be presumed to have been acquainted with the rules of law operating upon the subject matter. (2 *Meriv.* 22.) The revised statutes make void all directions for accumulation, except for the benefit of minor children, and during their minority. It will be perceived, on examining the will, that the testator intended to leave as little as possible to the discretion of his executors. Did he then intend that the rents and profits of his whole estate, amounting to $60,000 a year, should accumulate for 30 years in the hands of his executors, and yet give no directions whatever as to the mode of investing those rents and profits ? If it was intended that the estate should accumulate, why did the testator appoint guardians for his minor children ? The testator has directed that when his youngest child shall have attained twenty-five years, and after his wife's decease, his executors shall sell and allot all that shall then remain of his estate. It appears to us

that the very expression here used, "all that shall then remain," implies that something will have been taken therefrom, and if he had intended that his estate should accumulate, he would have used this expression: "all my estate and the ac-cumulation thereof." This is the common and natural mode of expression in such cases; but in no part of his will has he used the word accumulation, or any expression of similar import. We also insist that the testator has made provision for the education and maintenance of his minor children, out of the income of his estate generally, and that he would not have done this, had he intended that they or their guardians should receive their proportions of the income during their minority. It was a very common practice in England, many years ago, for persons of large estates, to tie them up by long limitations, and by directions for accumulations for almost indefinite periods. The inconvenience and injustice of such a practice was felt and acknowledged, but no steps were taken to prevent it, until the case of Mr. Thelusson's will (which was made in 1796) was brought before the house of lords on appeal, in the year 1805. (4 *Ves.*) It gave rise to the English statute of 39 and 40, Geo. 3, commonly called the Thelusson act, which prevents accumulations, except for a definite period. This act allows accumulation during the minority of any person living at the testator's death, or then in ventre sa mere, and therefore might be during the minority of a stranger, as well as that of a person to whom the estate is limited. (2 *Preston on Abstracts*, 180.) But our statute limits it to the minority of the person for whose benefit it is intended, and it makes void all directions for the accumulation of the profits, either of real or personal estates, except for the benefit of minor children, and limits it to the period of their minority. (1 *R. S.* 726, § 37. *Id.* 773. § 3.) In this case, the testator directs his executors to invest all his personal estate in certain specified securities, for the use and benefit of his children generally, and thereby gives to each of them a vested interest therein. (1 *R. S.* 728, § 49.) They are consequently entitled each to an equal share in the profits, unless the testator has otherwise disposed of those profits. The evident meaning of the statute is, that the estate of the minors only, shall

accumulate; and this is the construction which is put upon that part of the English statute which corresponds with ours. The right to accumulate during the minority is founded on the idea that if the minor had the beneficial ownership, the income, except so far as was necessary for maintenance, would accumulate during the minority, by the rules of common law; so that no more is done by the party under the power, given by the statute, for accumulations, than would be done under the rules of law, if such power had not been given. (*Preston on Abstracts,* 180.) In whatever light, therefore, this case may be viewed, whether with reference to the probable intentions of the testator, the rules of the common law, or the provisions of the statute, there cannot, we apprehend, be an accumulation of the rents and profits; and they must consequently go to the heirs at law.

*P. A. Jay,* for the defendants. Two questions are presented in this case: what the testator intended, and how far his intentions are controlled by the statute.

The personal estate of the testator is by law vested in the executors, and the complainants can claim no part of it from them, unless by virtue of the will. If there be any part which he has not disposed of by the will, it either belongs to his executors for their own use, or they will hold it in trust for his widow and next of kin.

The testator has not expressly given the interest or income of his residuary estate to any one. The bequest is residuary, and is not vested. For if either of the children dies before the period appointed for the partition, the portion of which he would have taken, if living, is not to go to his executors, or administrators, but to his children; and if either dies without issue before the said period, then the share he would have been entitled to, if living, is to go to the surviving children of the testator. The rule of law in case of such a bequest is, that the interest accruing between the death of the testator and the time of payment, if not otherwise disposed of, sinks into the residue for the benefit of the residuary legatee. (2 *Roper on Legacies,* 224. *Trevanion* v. *Vivian,* 2 *Ves. sen.* 430.)

The complainants' counsel endeavor to show that the testator has, by implication, given to the children the interest

and income. They urge that the testator directs his executors to invest his estate for the use and benefit of his children. If, indeed, the testator stopped here, the children would be at once entitled not only to the income, but to the principal of the estate. But he proceeds to explain the manner and degree in which it is to be for their use and benefit. So far as relates to the younger children, they are to be educated and liberally maintained out of the income. His son and daughters are to receive the legacies given them in the will. Finally, if they survive his wife, and are living when the youngest comes of age, they are to have the income of the whole estate ; and if not, the principal is to go to their children. Such a trust may, without impropriety, be said to be for their use and benefit. The testator's intention is to be gathered from the whole will taken together. If he has given no directions for accumulation, the law directs that the income shall accumulate and form part of the fund to be divided. The legacies given by the testator to his son and daughters furnishes no ground to infer that he intended they should have the income. Had he left nothing to his children, the inference would have been infinitely stronger ; for then it might fairly have been supposed that he did not intend to leave them destitute of support. The gift of a handsome fortune to each of his children is but a feeble argument to prove that he intended they should each have $10,000 a year besides.

It is said the testator must be presumed to have made himself acquainted with the revised statutes, and therefore did not intend any accumulation. Those statutes expressly allow accumulations within certain limits, and make void an accumulation, only so far as it is directed beyond those limits. It is said that no directions are given to invest the income. The direction to invest his estate is a direction to invest the proceeds of it. The interest accruing from the bonds and mortgages is as much part of his estate as the bonds and mortgages themselves. It is inferred that the testator intended that the rents and profits should be received by his children, because he appointed guardians for the infants, and nominated to that office two of his friends in pref-

erence to his wife and adult daughters. But when it is to be considered that the executors, and not the guardians, are to pay the expenses of the infants, and to pay them, not out of the monies of the infants, but out of the income of the trust estate, the inference is very strong that those guardians were not to be in the receipt of $30,000 a year. It is said that the testator would not have used the expression, "all that remains of my estate," if he had intended an accumulation. When it is considered, that at the period the testator is speaking of, the trustees will have paid legacies to the amount of near $400,000, the expression "all that remains" is not very unnatural. Had the testator intended that the income should be divided among the children, he would have given some direction for that purpose, and would have ordered that his son's share of it should be diminished after he had received his legacies. He would also have directed how the income of his younger children should be invested; for as they are to be educated and maintained by the executors, their whole share of the income must accumulate during their minority. The will directs that after the partition of the estate, the shares of the respective children are not to be paid to them, but shall be separately invested by the trustees in their own names, and that the income of the several portions shall be paid to the children during their respective lives. The principal is to be paid to their issue. It is therefore apparent, that until the youngest child arrives at the age of twenty-five years, it is the intention of the testator that his estate shall remain in one mass, and that nothing shall be paid out of it, except his debts and specific legacies, and the maintenance of his younger children. That after that period, the income shall be paid to his children, on their own receipts; and that the principal shall be secured for his grand children. He has in one case given special directions for the payment of the income, and therefore it was not through accident or forgetfulness that he omitted to do so in the other.

Upon the whole, it is plain that the testator intended that his estate should accumulate till the time arrived when he directed the income to be paid over. And if he has given no directions concerning it, it must, if governed by the law as it

1834.

Vail
v.
Vail.

stood previous to the revised statutes, for that very reason, accumulate for the benefit of those who may be eventually entitled to the principal. As to the real estate to be purchased by the executors, the testator intended it as a mere temporary investment. It is to be purchased with the proceeds of the personal estate, and is to be again converted into personal estate before it is divided. The heirs have no claim to it. In this court, and for this purpose, it must be considered as personalty. The real estate, of which the testator died seised, is situated differently. He has not devised it. It therefore descends to his heirs, subject to the powers given to the executors. They are expressly authorized to sell, and impliedly authorized to receive the rents and profits. We imply the latter power, because they are directed from the income of his estate, either real or personal, to pay and appropriate such sums as may be necessary for the respective support and education of his minor children. If the executors are thus to dispose of the rents and profits, they must be authorized to receive them. We imply this power, also, because the testator did not intend to die intestate as to the real estate. He had it clearly in his mind. He directed it to be sold by his executors, and gave the above direction concerning it until the period of sale should arrive. Yet it may perhaps be questionable whether his will upon the subject has been effectually expressed. And the executors pray the instructions of the court, and will cheerfully perform the directions that may be given them.

It remains to consider the provisions contained in the revised statutes on the subject of accumulations. (1 *R. S.* 726, § 27, 38.) It is directed that the accumulation of rents and profits of real estate must be made for the benefit of one or more minors, and must terminate at the expiration of their minority ; and if a direction for an accumulation shall be for a longer time, it shall be void for the excess only. And (1 *R. S.* 773, § 3, 4,) like provision is made in relation to accumulations of personal estate. It would be uncandid to deny that these regulations affect the dispositions of Mr. Salles' will. The accumulation probably must stop when the infants come of age. And as to two of the shares, the income must perhaps be

1834.

Vail
v.
Vail.

paid over immediately. Whether it is to be paid to the husbands of the two eldest daughters, or secured to the separate use of the daughters themselves, or in what manner it is to be disposed of by the executors, are points on which the executors respectfully crave the directions of the court.

THE CHANCELLOR. The principal, if not the only question in this case, is as to the disposition of the rents and profits of the real estate of the testator, and the interest or income of the general residue of the personalty, which may accrue before the time appointed for the distribution or apportionment of the residuary estate among the children. So far as the income of the real estate is concerned, the case admits of very little doubt. For it is a general rule of law, that so much of the real estate of a testator as is not legally and sufficiently devised to some other person, either in express terms or by necessary implication, descends to the heirs at law. The will in the present case does not devise the real estate to the executors in terms; although it authorizes them to sell the estate, at a future time, for the purpose of distributing the proceeds of such sale among the testator's children. This of itself is a mere devise of a power in trust; and the legal estate descends to the heirs at law until it is divested by the execution of the power. There is, however, a devise of the rents and profits to the executors, by implication, during the minority of the children, or while they remain unmarried. By the sixth clause of the will, the testator orders and directs his executors, from the income of his estate either real or personal, to pay and appropriate such sums as may be necessary for the respectable support and education of his minor children, until they shall severally attain the age of twenty-one years, or shall marry; and that on the happening of either of those events, this provision shall cease. Under this provision of the will, the executors are authorized, in their discretion, to support the minor children out of the rents and profits of the real estate, if they should think proper so to do. And this being a valid trust, the executors, by implication, take an interest in the land, to enable them to receive and apply the rents and profits for the purposes of the trust. (*Courthope* v. *Heyman*,

*Carter's Rep.* 25. *Stile* v. *Tomson,* 2 *Dyer's Rep.* 210.) But although the executors take the legal estate in the land, for a term of years which will end when the youngest child arrives at the age of twenty-one, or marries, there is a resulting trust in favor of the heirs at law of the testator, for the surplus rents and profits, which may accrue during the term, beyond what shall be actually applied for the support and education of the minors. One sixth part of such surplus, therefore, belongs to each of the children as a vested interest, and must be paid to them or their personal representatives, by the executors, at or before the termination of that particular trust. After the youngest child is of age, or married, the children will be entitled to the rents and profits of the real estate, as tenants in common. And from that time they will also have the legal interest in such real estate, during the life of the mother, and until the youngest child arrives at the age of twenty-five years ; at which time the power in trust is to be executed by a sale of the estate.

The questions as to the income of the personal estate, over and above what may be necessary for the support and education of the infant children, would have been equally easy of solution were it not for the provisions of the revised statutes which prohibit the accumulation of the rents and profits of real estate, or the interest or income of personal property, except for the benefit of infants, and during their minorities only. (1 *R. S.* 726, 773.) Two questions arise, under the statute, in this case. The first is, whether the interest or income of the residuary estate was intended by the testator to accumulate until the time appointed for the division or apportionment of the fund among the children, or their representatives, after the death of the widow ; so as to bring it within the prohibition of the statute. And the second, which is still more difficult and equally important in the present case, is, who are entitled to this interest and income, if there is a trust of accumulation which is rendered void by the statute. The first of these questions has been fully argued, by the counsel for the complainants and for the executors, and their written

briefs are before me. I regret, however, that I am compelled to decide the important principle involved in the second question, with so little aid from the learned counsel who have so ably argued the first. Especially as the executors have permitted this cause to be brought to a hearing, without having the widow and next of kin of the testator made parties; so that the decree which may be made between the present parties, if I should happen to err on the question of law, would not be binding upon those who are not represented in the cause.

By the law as it existed previous to the late revision, the testator could suspend the absolute vesting of his real or personal estate, until the terminaton of the minority of a child who might be born, or begotten, during the existence of any number of lives in being at the death of the testator. And it had also been decided by the highest judicial tribunal in England, that the interest or income of the estate might be accumulated for the same period; so as to go to the same person to whom the estate was ultimately given. (*Thelluson* v. *Woodford*, 11 *Ves. Rep.* 112.) Where the legatee took a vested interest in the principal of a residuary bequest, payable at a future time; although it was bequeathed over, or was subject to be divested by his death before the time appointed for the payment thereof, the interest or income of the legacy followed the principal sum, and belonged to the legatee, unless it was otherwise disposed of by the will. (*Nichols* v. *Osborn*, 2 *P. Wms.* 420.) But where a particular direction was given in the will, as to the application of the income during the time in which the payment of the legacy was suspended, the residue of the income fell into the general residue. (*Lownd. on Leg.* 434.) Here, the testator has appropriated a part of the income for the support and education of such of the children as were infants. From this, it is evident he did not intend they should take the whole income, as that provision would have been wholly unnecessary in that case; the income of their shares of the general residue being much more than could have been supposed necessary for their support and maintenance. Another substantial objection to the construction contended for by the complainants' counsel, is that

the children were not in any event to take the principal of this residuary fund. Even after the death of the widow, they are only to have a life estate in the income of the fund ; the principal is given over to their issue. As the testator has given them merely a contingent interest in the income of the fund after the death of the widow, it cannot reasonably be presumed that he intended to give them an absolute interest in the whole income previous to that time ; except so far as he has directed a portion of that income to be applied for their support during their infancy. [a] I have no doubt, therefore, that the intention of the testator was, that the income previous to that time should accumulate for the benefit of the issue of his children, to whom this residuary fund is ultimately given. This is such an accumulation of the income as the statute has prohibited, and declared void. Does this income, then, go to the children of the testator, contrary to his obvious intention ? or is it a surplus which is not legally bequeathed by the will, and which is to be disposed of by the statute of distributions ? That statute directs that the surplus of the testator's estate which remains after paying debts and legacies, if the same is not bequeathed, shall be distributed to his widow and children—one third to the former and two thirds to the latter. (2 R. S. 96, § 75.) From the best lights I have been able to obtain, I have arrived at the conclusion that the interest and income of the residuary estate, previous to the death of the widow, except so much as may be applied by the executors for the maintenance and education of the minor children, is a residue, or surplus of the estate, which was not legally bequeathed to any person by the testator. It must therefore be distributed by the executors, to the widow and next of kin, as in cases of intestacy. Such also appears to have been the opinion of Lord Eldon, upon the construction of the English statute, prohibiting the accumulation of the income of estates except for a limited period. (See 9 Ves. Rep. 133.) It is very evident that the testator did not intend his widow should enjoy the income of one third of his personal estate after his

(a) See Green v. Elkins, 2 Atk. 473 ; Butler v. Freeman, 3 Id. 58 ; Trevanion v. Vivian, 2 Ves. sen. 430.

death. Neither did he intend the children should have it during her life. He probably was not aware of the existence of the statute prohibiting trusts of accumulation ; but, by the will, it appears he intended to dispose of this income in a manner which the laws of the state do not allow.

It is said to be inherent in the nature of man to desire that his property should be perfectly free, and subject to his absolute control, during his life, and to tie it up from the control of his children and heirs forever afterwards. But there are no surer means of paralyzing the exertions and destroying the future usefulness of a legatee, than to hold out to him the prospect of great wealth, for himself or his children, at some distant period, without the exercise of ordinary industry and enterprise in obtaining it. This law against accumulations is, therefore, a salutary provision in the revised statutes ; as no man should be encouraged, or even permitted, to withhold the mere income of his estate from those who should be the first objects of his bounty, for the sole purpose of hoarding up wealth, by compound interest after his death, to provide for a second or a third generation, of whom he can know nothing. Neither is it necessary that he should be permitted to accumulate a fortune, after his death, even for his immediate descendants, to be given to them at the close of their lives, when they are no longer in a situation to enjoy it. It is the duty of the court, therefore, to carry this law into effect, according to its spirit and intent ; and in such a manner, if possible, as to correct those evils against which the revisors and the legislature intended to guard. And if the decedent does not make such a testamentary disposition of his whole property as is allowed by the laws of the state, so much thereof as is not legally and effectually disposed of, must be distributed among those upon whom the law would have cast it in case of an intestacy.

There must be a decree declaring the construction of the will in conformity with this decision. And the costs of both parties should be paid out of that part of the income of the personal estate which is not disposed of by the will.