New York County.—HON. D. C. CALVIN, Surrogate.— July, 1878.

## GRANT v. GRANT.

*In the matter of the estate of* JAMES GRANT, *deceased.*

Where a will empowered the executor, who was made trustee of the whole estate, real and personal, to sell the real property, and directed him, from the income of the whole estate to pay an annuity to the testator's daughter during her life, and after her death to her children, unborn at the time the testator died, until they should attain the age of twenty-one and then to pay them the principal sum, and upon her death failing issue, to pay the annuity to his nephew until he should become twenty-one, and then to pay him the principal; and further directed that the surplus income after paying such annuity should be invested in order that the interest might serve to supply the place of such portion of the income of the estate as might from time to time fail, *Held*, 1. That the disposition of the surplus income was such an accumulation as made the provision for it void under the provisions of the Revised Statutes (1 R. S., 773 § 1) 2. That the direction to sell the real property converted it into personalty, so as to save the devise to the executor, and not to allow it to fail as an illegal suspension of the power of alienation. 3. That by virtue of the provisions of 1 R. S., 773 § 2, the person entitled to the surplus was the same as would have taken it if it had been real property, and under 1 R. S., 726, § 40, the nephew should receive it as being "presumptively entitled to the next eventual estate."

On the final accounting of the executor, a question arose in respect to the effect of certain provisions of the will of the deceased.

After providing for the payment of debts and

.funeral expenses, the will gave specific and general legacies, and by the third clause gave, devised and bequeathed the residue of the estate, real and personal, in trust to his executor, who was directed out of the rents, profits, and income to pay for the education and maintenance of the testator's daughter Catherine, $500 per annum, during her life, and if she should die leaving a child, or children, the executor was directed to pay said sum, or so much thereof, as he might deem necessary for the education, and support of the child, or children, until they should become twenty-one years old when the whole estate should vest in such child or children; but in case his daughter should die without children, the remaining estate was given to the testator's nephew Hugh Grant, and the executor was directed, in case the rent, income, and profits of the estate should be more than sufficient to pay the trust aforesaid, to invest the surplus so that the interest thereof might also be invested to form a principal sum in place of the income or rents which might cease.

The will also gave to his said executor in trust $4,000 to be paid to his nephew aforesaid, and provided that the former trust to his daughter Catherine, and to her children should be subject to this latter trust, which $4,000 was to be paid to said nephew, when he should arrive at the age of twenty-one years. The will was dated 21st day of January 1865, and on the next day, the testator executed a codicil which empowered his executor to sell, and dispose of any portion of his estate, and to execute and deliver a conveyance to purchasers, and after paying incum-

brances and charges, to keep the balance of the money arising from such sale for the payment of the bequests, and discharge of the trusts, contained in his will.

The testator left no widow. His daughter Catherine who is unmarried, and his nephew Hugh Grant survived him.

JOHN E. DEVELIN, *for the next of kin.*

JAMES M. SMITH, *for Hugh Grant.*

. THE SURROGATE. — The question to be determined is, what becomes of the surplus income of the testator's estate after the payment of the annuity of $500 to his daughter Catherine, which it is provided by the will shall be invested so that the interest thereof may be invested in order to form a principal sum in place of the income, or rents which may cease.

By the terms of the will there seems to be a possible suspension of the alienation of the real estate of the deceased, in violation of the statute,— that is for more than two lives in being at the creation of the estate — since the power of alienation by the executor is suspended during the life of the testator's daughter Catherine, and of her children, until the time they shall become twenty-one years of age.

.The accumulation of the surplus, so called in the will, seems to have been provided in order to meet the possible exigency that the current income of the estate should not be sufficient to discharge the trusts, (though it is very awkwardly expressed), but I can give no significance to the language " in order to form a principal sum in place of the income, or rents which.

may cease," for there is no provision in the will authorizing the executor to make any disposition of real estate. This being so, it seems to me, that it is an attempt at accumulation in violation of the Revised Statutes (1 *R. S.*, 773, § 1), which provides that the absolute ownership of personal property shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance, and until the termination, of not more than two lives in being at the death of the testator; and by subdivision of section 3 of the same statute, it is provided that the accumulation shall be for the benefit of one or more minors, then in being, or in being at the death of the testator, and to terminate at the expiration of their minority, and by the 4th section it is provided that all directions for any accumulation of interest, income or profit of personal property other than such as is above provided, shall be void.

But the direction to the executor to sell the testator's real estate contained in the codicil, obviates the objection to the validity of the devise, as unlawfully suspending the power of alienation, as such direction is regarded as tantamount to an actual conversion into personalty for the purpose of ascertaining whether the bequests of future or contingent interests therein are valid. (Gott *v.* Cook, 7 *Paige*, 521, 534; Kane *v.* Gott, 24 *Wend.*, 641.)

By section 40 of 1 *Revised Statutes*, p. 726, it is provided that when, in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation, or of the ownership, during the continuance of which the rents and profits shall

be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the person presumptively entitled to the next eventual estate.

On the part of counsel for the daughter, it is claimed that the unlawful accumulations provided for in the will, being surplus income over and above the amount sufficient to pay the $500 annuity to his daughter, leaves such surplus undisposed of by the will, and that said daughter is therefore entitled thereto as next-of-kin under the statute of distributions, while the counsel on behalf of Hugh Grant, the nephew, claims that the amount thus unlawfully accumulated belongs to his client, under the 40th section (above cited), because he is the person presumptively entitled to the next eventual estate, which section, though it is a part of the title relating to the nature and qualities of estates in real property, and the alienation thereof, is made applicable to personalty thus unlawfully accumulated, by section 2 of 1 *Revised Statutes*, p. 773, which provides that in all cases, except the provisions of the section prohibiting a suspension of the ownership of property, limitations of future or contingent interests in property shall be subject to the rule prescribed in the 1st chapter of the act in relation to future estates in lands, which chapter embraces the 40th section (above cited).

In Haxtun v. Corse (2 *Barb. Ch.*, 506) the will there under consideration directed the fourth part of the residuary estate, or the avails thereof, to be placed at interest, and the interest or income during the life of the son, Barney, to be applied by the executors to the

support of Barney's family and the education of his children born and to be born, and that the one-quarter of the principal, and what might remain of the interest, be distributed and divided after the decease of his said son among his then living children, and the issue of such as should be dead.

The Chancellor (at page 517) says that "so far as regards the trust to invest the capital of this fourth of the residuary estate, and to apply the income, or so much of it as may be necessary, to the support of Barney Corse's family and the education of his children, it appears to be such a trust as is authorized by the 3d subdivision of the 55th section of the article of the Revised Statutes relative to uses and trusts, for it is a trust to receive the income of the property, and apply so much of it as should be necessary for the support of such of his son's family as were in existence at the decedent's death, for life, subject to open and let others into the class from time to time."

"It is true such an interest in the income of the estate may suspend the absolute ownership of the property during its continuance; but as that absolute ownership is in no way to be suspended beyond the life of Barney Corse, which is only during the continuance of one life in being at the death of the testator, this portion of the will does not contravene the provisions of the Revised Statutes in that respect;" and (at page 518) he says: "The implied trust, however, to accumulate any part of the income of this share of the testator's estate for children or descendants of Barney Corse, who were not in existence at the time when such accumulation was to

commence, or whose right to the accumulated fund is entirely contingent, is undoubtedly void under the provisions of the Revised Statutes relative to accumulations;" and that "such surplus income, so far as it arises from real estate or the proceeds thereof, if not otherwise disposed of by the will of the testator, would belong to his heirs-at-law; and, so far as it arises from personal estate, would belong to his widow and next-of-kin;" and after citing section 40 as to who is entitled presumptively to the "next eventual estate," and section 2 (above cited) as applying the 40th section to a future interest in personal estate, he says: "In the case under consideration, the five children of Barney Corse who were *in esse* at the death of the testator, are presumptively entitled to the next 'eventual estate' in this fourth part of his property, and I see nothing to prevent them from taking the whole of the income thereof which is not effectually disposed of by the will during the time they continue to be thus presumptively entitled." This decision would seem to refer the language of section 40 already cited, "the person presumptively entitled to the next eventual estate," to the person presumptively entitled under the provisions of the will, and not such as would appear to be entitled under the statute of distributions, because if the latter had been the construction given, Barney Corse would have been presumptively entitled as next of kin, instead of his children.

In Gilman v. Reddington (24 *N. Y.*, 9), the testator devised and bequeathed the residue of his estate to his executors to apply the same, or the income, or so

much of the estate, or income, as they should see fit, to the education and support of his three infant children, until the two youngest should attain the age of thirty years, or should die under that age, at which time the trust was directed to be paid, conveyed, or made over to said three children or such as should then survive and the issue of such as should be dead. It also contained a provision giving to the widow two-thirds of the income of $20,000, the other one-third to be invested, and added to the principal, which with the principal went into the *residuum,* no other disposition being made of it. In discussing the question of this accumulation, Judge Comstock says: " Considering the amount of the value of the residuary estate, it is probable that all the income will not be expended, during the trust, for the education and support of the children, or their issue. In that event, it will clearly be the duty of the trustees, according to the will, to accumulate the surplus, and this amounts to a direction for such accumulation. This direction is void so far as it includes any period of time beyond the minority of the children respectively, and the court below has so decided. The result, however, is not an absolute intestacy as to the surplus income after the minorities shall cease." And then the learned judge cites section 40, and says: " This section relates immediately to the rents and profits of land, but the statute which has been cited relating to personal estate, and the accumulations thereof, it has been held refers to, and adopts the same rule," and (citing Kilpatrick *v.* Johnson, 15 *N. Y.,* 322.) "The children of the testator are presumptively entitled to

the 'next eventual estate,' in both real and personal property, and according to this rule the surplus income, after their minorities shall cease, will be payable to them without accumulation."

This conclusion seems to me also to refer the language of section 40, to the persons presumptively entitled to the next "eventual estate," to such persons as are entitled by the terms of the will; otherwise the widow as well as the children would have been entitled to participate under the statute of distribution.

In Craig v. Craig, (3 *Barb. Ch.*, 76), the testator after providing for the payment of his debts, and giving some small legacies to collateral relatives, disposed of the residue of his estate and, among other things, directed his executors to invest in bonds and mortgages, and in New York State stocks, moneys sufficient to produce five hundred dollars *per annum*, in trust for his son John, which sum was directed to be used by his executors, or so much as should be necessary, for the support and maintenance of John, and the principal thus invested, and such proceeds as might remain at John's decease unexpended, he devised and bequeathed to John's legal issue, and in case of no issue, then to his four children, by name, other than John.

It was held that this was an implied direction to accumulate the surplus income in trust for adults, or persons not in being at the time the accumulation was directed to commence, and was therefore void by the provisions of the Revised Statutes as a suspension of the ownership of such surplus, and no valid direction for its accumulation; and hence that the next "event-

ual estate" was the capital of the fund, and that by the terms of the will, the brothers and sisters of John were the persons presumptively entitled thereto. This seems to be in harmony with the above cases defining the persons presumptively entitled to the next "eventual estate" to be those who would be so entitled under the will, otherwise John, with the other brothers and sisters, would have been entitled to his share of such surplus as one of the next of kin under the statute of distributions.

In Kilpatrick *v.* Johnson (15 *N. Y.*, 322), the testator had directed his executors to sell and convert into money all his estate real and personal, to invest one-half of the residue after payment of debts, as trustees for his wife, and pay the interest to her, and any portion of the principal necessary for her maintenance; then directed that on the death of his wife, such portion of the principal and interest not paid to her should be equally divided among his three children. The remaining half of the proceeds was given to the same three children, the share of one of the children, Eliza, to be placed at interest by the executors for her, and her children, and the executor to pay the interest or principal during Eliza's life, such sum as they might consider necessary, in case of the death of her husband, or of his inability to support her, and that on the death of his said daughter, all the principal and interest moneys remaining should be equally divided among her children. Denio, C. J., (at page 325) says: "The testator evidently intended that there should be an accumulation of the interest upon these shares, in the event that such interest should not be needed for the support and maintenance of his daughters.

"The duty of accumulating the interest was contingent; but it was none the less, within the language and the reason of the statute, a direction for accumulation. Such a direction in order to be valid, must be directed to be made for the benefit of one or more minors then in being, or in being at the death of the testator, and to terminate at the expiration of their minority," and he held such direction void. As to whom that interest, as it should be realized from the investments, belonged, the court, after citing section 40 as to persons presumptively entitled to the "next eventual estate," and section 2, as to the application of that statute to the limitation of future or contingent interest in personal property, held that the daughters, assuming them to have had children at the death of the testator, some or all of whom were still living, were the persons presumptively entitled to the next ' eventual estate,' and that they took the whole of the interest upon their mothers' shares, during the time they continued to be thus presumptively entitled.

This case also proceeds upon the same theory that the children of the daughter, who by the terms of the will were to be entitled to the property thus invested, were the persons presumptively entitled to the next " eventual estate," and not those entitled under the law of descent or distribution, because under that law the daughters, not their children, would have been entitled.

In Robison *v.* Robison, (5 *Lansing,* 165), the testator gave real estate to his executors, and directed them to convert it into money, accumulate the income, and after the death of his wife, divide the whole

among his nephews. It was held that the direction for accumulation after the majority of the nephews was nnlawful, and that such accumulation belonged to the nephews, as presumptively entitled to the next "eventual estate."

In Schettler v. Smith (41 *N. Y.*, 328), the testator gave one equal one-fourth of the residue of his estate to his executors in trust to pay the rents, &c., to his son Lafayette Smith, during his life, and, on his decease, to convey in fee to Lafayette's issue by another than his present wife, but if said son should die without issue, to convey said one-fourth ·in fee to the issue then living of testator's two children, John J. and Lawrence S., and to the issue then living of his daughter Cornelia by a husband other than Schettler. He gave another fourth to his executors in trust to pay the income to his son John Jacob for life, and at his decease, to his wife during life, and on her decease, if he left a widow, or if he left no widow, then on his decease, to convey in fee to the issue then living of John Jacob, but if he should die without issue, to transfer to the issue then living of his son Lawrence, and of his son Lafayette, by another than his present wife, and the issue then living of his daughter Cornelia if by other than Shettler.

He also gave another fourth part of his residuary estate to his executors in trust to pay the income to Lawrence S., his son, for life, and on his decease to his widow during her life, and upon her decease, if he leave a widow, but if he leave no widow then on his decease to transfer in fee to the issue then living of Lawrence, but if he die without issue convey the same

to the issue of John Jacob, and of Lafayette by another than his present wife; and the other fourth was given to his executors in trust to pay the income, $800 *per annum*, to his daughter Cornelia until her marriage, and on her marriage, in case she should not marry Shettler, or, on Shettler's decease, to pay said daughter, all the rents, profits, and income from the testator's death during her life, and on her decease convey to the issue living of said daughter, by her husband, other than Shettler; but if she die without issue, to convey said fourth part in fee, to the issue of his children John J., Lawrence S., and of Lafayette, by another than his present wife, but if Cornelia should marry Shettler all her interest should cease during coverture, and during such coverture should pass to testator's other children then living, and the issue of those dead, provided that if Cornelia should leave issue by another husband than Shettler they should be entitled to the one-fourth in fee. And Grover, J. (at page 340), commenting upon the last provision after citing section 40 so often recited says: " The daughter Cornelia was presumptively entitled to the next ' eventual estate ' in the income. This is given to her for life, upon marriage with any person, other than Shettler, or upon his death. It is given to no one else until after it shall be determined whether she married Shettler. Under this section I think the excess of the income until the marriage of Shettler if any belonged to Cornelia, and upon her death vested in her administrator, the plaintiff." Although there was a division of the court upon the question, the decree below was modified by adjudging the plaintiff,

the representative of Cornelia, entitled to recover the excess of the income of the one-fourth of the property over and above $800 a year paid to Cornelia during the period before her marriage, she having married Shettler after the death of the testator. This seems also to be in harmony with the other cases considered as to the effect of the 40th section referred to.

In Cushman v. Horton, (59 *N. Y.*, 149), the will gave and bequeathed to the testator's sister Polly, the use and profits of $2,000 to be paid by the executor to her, and after her death, the $2,000 was given to the lawful heirs of the testator's brother Medad. The rest and residue of his estate he gave to his wife. It was held that the bequest was not void, nor did the legacy lapse, but it did not vest until, upon the death of Medad, it was determined who were his heirs, and that the residuary legatee was entitled to any interest accruing thereon intermediate the death of Polly, and that of Medad, upon the principle that the residuary legatee by the terms of the will was presumptively entitled to the next " eventual estate."

In Manice v. Manice, (43 *N. Y.*, 303), it was held that a direction for accumulation being void, the portion of the income directed to be accumulated became immediately payable to the persons presumptively entitled to the "next eventual estate" in the *corpus* or principal.

It is quite clear that this case regards the person presumptively entitled to the next " eventual estate" as the person so entitled pursuant to the terms of the will.

In Vale v. Vale (4 *Paige*, 317), it was held that

where the testator bequeathed to his children a contingent interest for life in the income which might accrue from the residuary fund after the happening of a particular event, they were not entitled under the will to the income of the fund previous to that time, and no valid bequest being made of such previous income, it must be distributed as in case of intestancy.

In Hull v. Hull (24 N. Y., 647), the testator bequeathed property to his executor, in trust to pay an annuity of $500, with a discretion to increase it to $1,000, to his son, till of the age of 30, and then to pay what should remain of the principal and accumulated income to his son, in case he was solvent in the opinion of the executors.

It is a noticeable fact that in Vale v. Vale (above) no allusion is made either to section 40 or section 2, making the 40th applicable to a limitation of future or contingent interest in personal property, and it should also be noticed that in Hull v. Hull (above) no such allusion is made.

In the present case, there seems to be a valid limitation of the expectant estate upon the life of the daughter, and a suspension of the power alienation, or ownership, and that during the continuance of such suspension, a portion of the rents and profits are undisposed of, and no valid direction for their accumulation given, and it is equally clear that the next eventual estate, while the daughter survived, is that which is given to Hugh Grant, the nephew, until the daughter shall marry and have issue, when such issue undoubtedly would be the persons presumptively entitled to the next "eventual estate." The expression

" presumptively entitled to the next eventual estate " are words appropriate to estates created by will, and are not applicable to descent, or to distribution.

If I am right in holding that a direction to sell converts the real estate into personalty, then the only enquiry seems to be whether section 2 is applicable to such a case. It seems to me clearly so, because there is a limitation of a future or contingent interest in personal property, by the will in question, and this latter section seems to be regarded in almost every case which I have reviewed, as making, under the rule relating to expectant estates, and the suspension of the power of alienation, or ownership, the undisposed of accumulation to belong to the persons presumptively entitled to the next " eventual estate."

It will be observed that in Haxtun *v.* Corse (above), while the head note and the language of the chancellor seem to establish the rule that the surplus income and trust property from real estate, if not otherwise disposed of by the will, belongs to the heirs-at-law, and such as arises from personalty belongs to the widow and next-of-kin, yet this language of the learned chancellor should be taken in conjunction with that which he afterwards uses respecting the fortieth section, and its application to personalty, together with the determination of the case that the children of Barney Corse are presumptively entitled to the next eventual estate, and were held entitled to the whole income not disposed of effectually by the will, for in that case, if the heirs or next-of-kin had been held to be entitled to the undisposed surplus, then Barney Corse, together with the testator's other children,

including his widow, would have been entitled, showing conclusively that the chancellor regarded the fortieth section as applicable to the case, and an obvious direction in respect to surplus income, not validly directed to be accumulated.

In respect to the case of Hull v. Hull (above), which is stated as an authority for the doctrine that where there is a failure to dispose of the rents and profits, and no valid direction for their accumulation, such unlawful accumulation shall be disposed of as in case of intestacy, it is proper to state that the facts in that case show that there were no persons presumptively entitled to the next " eventual estate " in being, and therefore the fortieth section was not applicable to that case, for the suspension of the power of alienation was not in consequence of a valid limitation of an expectant estate, since by the terms of the will, the principal and the accumulated income were to be paid to the son when he became thirty years of age, and the income, less the unlawful accumulations, was to be paid to him in the meantime.

Indeed it seems to me that section 40 was enacted for the express purpose of providing for the disposition of rents and profits not validly accumulated, and that they should go to the persons presumptively entitled to the next "eventual estate," instead of to the heirs and next-of-kin — for in cases of intestacy without any such section, it would necessarily go to the heirs and next-of-kin, and the language "presumptively entitled to the next eventual estate" is in no sense appropriate to intestacy, and the term "next eventual estate" is doubtless used in the statute as an

estate, "happening as a consequence;" and I am of the opinion that the same rule is made applicable to a limitation of future or contingent interests in personal property by the second section referred to.

I hold therefore that the income directed to be accumulated by the will in question belongs to the person presumptively entitled to the "next eventual estate," that is, the nephew, Hugh Grant.