### RICHARDSON *v.* HUNT *et al.*

(*Supreme Court, General Term, Fifth Department.* April 16, 1891.)

1. CONSTRUCTION OF WILLS—NATURE OF ESTATE.

A will gave one-third of testator's real estate to his wife for her life, in lieu of dower, and, after her death, to trustees, the final division thereof not to take place until the death of the wife, and until testator's son G. should become of age, or, if he should not obtain full age, such final division to take place upon the death of the wife and the death of G.; such one-third of the real estate to remain undivided, with the rents and profits thereof, from the death of the wife until the death or arrival at full age of G. Before the death of the wife, G. had become of age and had died. *Held*, that as the devise to the wife for her life was absolute, and the trust after her death, for accumulation of rents and profits, was void by statute, except so far as it was for the benefit of G. during his minority, and as to him failed of operation by his arrival at full age and death during the life of the widow, there remained at her death no trust to be executed, the trustees having only to partition and convey the property pursuant to the will, and no title vested in the trustees.

2. SAME—ASSIGNMENT FOR BENEFIT OF CREDITORS.

As the devise, although invalid as a trust, was valid as a power in trust, and the land descended to the persons otherwise entitled, subject to the execution of the trust as a power, another son of testator, entitled to a share in such part of the real estate, took an expectant estate therein to commence at the death of the widow; and such estate, being alienable by statute, passed by a general assignment by such son for benefit of his creditors, made by him during the life of the widow, and after the arrival at full age and death of G.

Case submitted on agreed statement.

Submission of controversy between John E. Richardson, assignee for benefit of creditors of William M. Hunt, and Elizabeth W. Hunt and another, and Sterling G. Hadley, executor of Richard P. Hunt, deceased. Rev. St. N. Y. pt. 2, c. 1, tit. 2, art. 1, § 8, provides: "An estate in possession is where the owner has an immediate right to the possession of the land. An estate in expectancy is where the right to the possession is postponed to a future period." Section 9 provides: "Estates in expectancy are divided into (1) es-

tates commencing at a future day, denominated 'future estates;' and (2) reversions." Section 35 provides: "Expectant estates are descendible, devisable, and alienable, in the same manner as estates in possession."

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Charles A. Hawley,* for plaintiff. *Henry W. Conklin,* for defendant Elizabeth W. Hunt.

MACOMBER, J. This controversy arises out of the adverse claims made to certain real estate. The plaintiff's title thereto is based upon a general assignment for the benefit of creditors, executed by the defendant William M. Hunt, on the 1st day of March, 1879. The defendant Elizabeth W. Hunt demands such property by virtue of an assignment to her made by the same William M. Hunt on the 5th day of December, 1889. The claims of both parties are made under the last will and testament of Richard P. Hunt, who died on the 7th day of November, 1856, which will was admitted to probate by the surrogate of Seneca county. The defendant Hadley is the only survivor of the executors and trustees named in such will. In his representative capacity he has no interest in the issue made by the submission between the plaintiff and the defendant Elizabeth W. Hunt. In order to appreciate the legal questions between these parties, it is necessary to state in detail, though they are very prolix, the provisions of the will of the testator, so far as the same relate to the questions in dispute. By the second clause or item of such will the testator gave and devised to his wife, Jane C. Hunt, one equal third part of all and singular his real estate, wheresoever situated, for and during the period of her natural life. This was made in lieu of her dower in her husband's estate. The third clause is as follows: "From and after the death of my said wife, Jane C. Hunt, I do give and devise to my true and trusty friends Sterling G. Hadley and Walter Quinby, of Waterloo, aforesaid, the said equal one-third part of all and singular my said real estate, wheresoever situated, (the use of which is hereinbefore given to my said wife,) to be by them nevertheless held in trust for the period and purposes hereinafter expressed, and be by them possessed and disposed of as hereinafter directed; and from the time of the death of my said wife they are to take possession thereof, and hold the same until disposed of as hereinafter directed." In the fourth item the testator says: "I have determined to confide the care and management of my estate temporarily to trustees, and in pursuance of these designs, and in view of the consequences which so frequently result from young persons coming at once into possession of property, I have determined that the said trust shall continue, and that the final division and partition of my estate shall not take place until the times and periods hereinafter mentioned, to-wit: As to that one-third part of my real estate hereinbefore devised to my said wife during her life-time, not until the death of my said wife, and until the time when my son George T. shall attain to the full age of twenty-one years, provided he shall live to attain to that age, and, if not, then said division and partition of said one-third part of said real estate shall take place immediately upon the death of my said wife and son George T.; and from the time of the death of my said wife until the time of the death of arriving at full age of my son George T., provided he shall attain to that age, said share or portion, aforesaid, of my real estate, shall remain undivided, with the rents, issues, and profits thereof, not otherwise expended, in the hands of my said trustees, for the uses and purposes herein mentioned." The fifth item is as follows: "In order to provide against accidental inequalities and diversities of condition which might exist at the expiration of said trust, and to discourage prodigality, I have determined to invest my said trustees with extensive discretionary powers in regard to the division and disposition of my estate, to be exercised by them with a due regard to the circumstances and condition of each child, and the situation of the property. I do therefore hereby nominate and appoint my

friends Sterling G. Hadley and Walter Quinby joint and several trustees of all and singular my estate, real and personal, of which I shall be seised and possessed at the time of my death, or be entitled to devise and bequeath; and I do hereby give, devise, and bequeath unto the said Sterling G. Hadley and Walter Quinby all and singular the said rest, residue, and remainder of all and singular my estate, both real and personal, of which I may die seised or possessed, in trust, nevertheless, to have and to hold, manage and control, and finally dispose of the same, to collect, receive, apply, and pay out the rents, issues, and profits, proceeds, interest, increase, and income thereof, of every kind and nature, and also of said one-third part of said real estate hereinbefore devised to may said wife during life, from and after her, said wife's death, in the manner and for the purposes and during the period herein mentioned and expressed." The eighth item of the will is as follows: "I do hereby order, will, and direct my said trustees to take possession of all and singular my estate, both real and personal, herein devised and bequeathed, to them, and to hold, use, manage, control, and govern the same, in the manner, for the purposes, and during the period herein provided; and all and every person, taking any share or portion of my estate, shall take the same in the manner, at the times, and under the limitations herein contained, and not otherwise." The eleventh item of the will reads as follows: "For the doing, executing, and performing all and every act or acts, thing or things, proper and necessary to the prudent management, control, division, and final settlement of my property and estate, custody, care, control, education, and maintenance, and welfare of my children, while minors, unmarried, not inconsistent with the objects and provisions hereof, I do hereby invest and give my said trustees full and ample power and authority." The concluding clause of item 12 is as follows: And I intend and order my said trustees that from the time of my death, up to the time of such final division of said residue and remainder, said trustees shall annually use and expend out of my estate all such sums as may, in their opinion and judgment, be necessary and proper for the support, education, and maintenance of all my said minor children; and I wish them, one and all, to have at least a good English education." Item 14: "I do hereby expressly authorize and direct said trustees to provide a fund out of my estate, commensurate with and ample for the support and education and maintenance of said children, up to the time of such final division of said residue and remainder." A portion of the sixteenth item of the will is as follows: "I hereby expressly authorize and empower my said trustees, survivor, successor, or successors, duly appointed, to sell and convey all and singular my real estate, of which I may die seised or possessed, at such time or times, and upon such terms and conditions, as they think best and most beneficial to the interests of my estate, except, however, that they shall not sell or convey my homestead farm, so called, where I now reside, situated in the town of Waterloo, between the Seneca outlet and the North Canandaigua road, so-called, nor any part of it, except such part as they shall lay out into village lots, if any, as hereinbefore provided; which village lots, if so laid off, they may sell and convey in their discretion." Thence follow authorizations for the execution of sufficient deed of conveyance of the lands which they may dispose of. The exception of the homestead farm, contained in this item of the will, does not cover the lands in controversy in this action. The portion of the nineteenth clause material to the questions involved is as follows: "I do hereby exressly authorize and empower my said trustees, from time to time, and at such times as they may think proper, to make such repairs and improvements in and upon any building or farm of which I may die possessed as they deem best, suitable, or necessary; to keep all or any of said buildings properly insured; to employ such laborers, servants, and agents as they deem necessary to aid them in managing, controlling, and settling my estate."

In pursuance of the provisions of the will there was set apart by the trus-

tees for the widow the one equal third part of the testator's real estate, thus devised by the second paragraph of the will, and she continued to receive the income thereof until her death, which happened November 28, 1889. Richard Hunt, who is mentioned in the fourth paragraph of the will, became of age July 4, 1859, and shortly thereafter the trustees made a division and partition of the "rest, residue, and remainder of said estate," concerning which no question arises upon this submission. The assignment of any interest of William M. Hunt was given to Messrs. Hadley and Quinby and Jane C. Hunt, as trustees, on the 1st day of March, 1879, but the same was collateral only to the payment of a certain indebtedness, and such instrument has no bearing upon any of the legal questions arising between these parties. After the execution of such collateral security, but on the same day, namely, the 1st day of March, 1879, William M. Hunt, who was the son of the testator, executed a general assignment, for the benefit of creditors, to the plaintiff, the particulars of which it is not necessary to mention, except to say—*First*, that the estate so assigned was sufficient to pay only about 51 per cent. of his indebtedness to creditors; and, *secondly*, that in the inventory executed and filed by the assignee, in pursuance of law, the interest of William M. Hunt in and to the lands in question was not set down or mentioned, although the assignment, being in the usual form, was broad enough to cover any interest of the assignor in real estate. After the death of the widow, Jane C. Hunt, November 28, 1889, William M. Hunt did, on the 5th day of December, 1889, execute and deliver to the defendant Elizabeth W. Hunt an instrument in writing, duly acknowledged and recorded, by which, for value received, he sold and assigned any interest in his father's estate to his wife, the defendant Elizabeth W. Hunt. The plaintiff, as such assignee for the benefit of creditors, claims the interest of William M. Hunt in the one-third of the real estate in question under the general assignment; while it is contended in behalf of Elizabeth W. Hunt that during the life-time of Jane C. Hunt the assignor of both parties, William M. Hunt, had no title to nor interest in this property which he could assign or convey.

The question submitted to us is this: Did William M. Hunt, during the life-time of Jane C. Hunt, have a title to or interest in the said one-third of the testator's real estate, which he could convey? If this question is answered in the affirmative, then judgment should be rendered that the title to the share of said William M. Hunt, therein subject to said collateral assignment to said executors, is in the plaintiff, John E. Richardson, as said assignee; that said Hadley should convey and deliver possession thereof to him; and for such other relief as to the court shall seem just. If said question is answered in the negative, then judgment must be rendered that the title to said share, subject to said collateral assignment to said executors, is in the said Elizabeth W. Hunt; and that Hadley convey and deliver said possession thereof to her, or for such further relief as to the court shall seem just.

The question so submitted is to be determined by the further inquiry, whether or not the trustees under this will took the title to this real estate. If they did, it could have been done only in pursuance of the provisions of the Revised Statutes relating to uses and trusts. 1 Rev. St. 728, § 55. By this statute express trusts may be created for the following purposes: "(1) To sell lands for the benefit of creditors; (2) to sell, mortgage, or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon; (3) to receive the rents and profits of lands, and apply them to the use of any person during the life-time of such person, or for any shorter term, subject to the rules prescribed in the first article of this title; (4) to receive the rents and profits of lands, and to accumulate the same for the purposes and within the limits prescribed in the first article of this title."

It will be observed, first, that the devise of the real estate to the wife during her life was absolute. The so-called "trustees" were not directed by the

terms of the will to collect the rents, and pay them over to her, but the use and income and profits of this portion of the real estate of the testator were given to the widow without the intervention of any person. The only portion of the so-called trust which was valid and capable of enforcement is contained in that part of the will by which the accumulation of rents and profits, after the death of the widow, was to continue during the minority of George T. Hunt. Had this provision stood alone, and had it been made for the benefit of the infant, and had not been coupled with the accumulation of the rents for the benefit of five others, some of whom were of full age, it is possible that, theoretically, at least, a legal trust could be spelled out from the terms of the will. Under sections 37, 38, 1 Rev. St. 726, the proposed accumulation of the rents and profits of the real estate for the benefit of all these persons was void. *Vail* v. *Vail*, 4 Paige, 317; *Pray* v. *Hageman*, 92 N. Y. 508; *Barbour* v. *De Forest*, 95 N. Y. 13. George T. Hunt arrived at age April 18, 1873, about six years before the assignment was made by William M. Hunt to the plaintiff. The time, therefore, never arrived when the trustees could enter upon the discharge of any duties under the will relating to the accumulation of rents and profits above mentioned. When Jane C. Hunt died there remained to be executed no trust whatever under the will, whether lawful or unlawful. At her death, George T. Hunt having become 21 years of age long before, and having died, the trustees could, under the will, perform but one act, and that was to partition and convey the property in pursuance of the directions of the will. Those provisions did not give them the title; they did not constitute them legally trustees, with a title to the real estate.

But this devise, though invalid as a trust, was valid as a power in trust, within the meaning of 1 Rev. St. 729, § 58, in which attempted express trusts made by will for any purpose not enumerated in the statute, in which it is provided that no estate shall vest in the trustees, but the trust, if directing or authorizing the performance of any act which might be lawfully performed under a power, shall be deemed valid as a power in trust. Section 59 provides that, in every case where the trust is valid as a power, the lands to which the trust relates shall remain in or descend to the person otherwise entitled, subject to the execution of the trust as a power. It appears, therefore, that this trust, in its creation, was not, within the meaning of section 60, valid, because by necessary implication the same would fail of operation by the arrival at full age of George T. Hunt during the life-time of his mother, or by his death during that time. The most that can be said in favor of it is that it was a trust contingent upon the happening of an event, which was by no means ascertainable and certain. See, for general discussion of the questions here involved, the cases of *Clift* v. *Moses*, 116 N. Y. 144, 22 N. E. Rep. 393; *Chamberlain* v. *Taylor*, 105 N. Y. 185, 11 N. E. Rep. 625; *Cooke* v. *Platt*, 98 N. Y. 35; *Robert* v. *Corning*, 89 N. Y. 225, and the cases there cited. The estate of William M. Hunt was an expectant estate, and alienable, under 1 Rev. St. p. 723, §§ 8, 9, and Id. p. 725, § 35, which should commence at a future date, namely, upon the death of his mother. At her death it became an estate in possession, and as such was descendible, devisable, and alienable. Id. p. 725, § 35. This view finds strong corroboration in a portion of the will in the ninth item, not above quoted, which is as follows: "And I do will, devise, and bequeath the same unto such children of mine then living, and the issue then living of such of my children as are then dead, if any, each and every such particular and specific portion, parcel, and share of my said estate as shall be so separate and allotted, partitioned and awarded, to them respectively, by said trustees, their survivor, successor or successors, duly appointed, and to their heirs and assigns, forever." It follows, therefore, that the question submitted to us must be answered in favor of the plaintiff. Judgment is directed accordingly, with costs to both parties, and with an allowance for disbursements to the surviving trustee Hadley, payable out of the fund. All concur.