NEW-YORK, MAY, 1811.

JACKSON v. WHITE.

———————

JACKSON, *ex dem.* WHITE and others, *against* WHITE.

THIS was an action of ejectment, to recover 18 acres of land in the village of *Ballston*. The cause was tried at the *Saratoga* circuit, in *May*, 1810, before Mr. Justice *Van Ness*.

On the 23d *October*, 1808, *Stephen H. White*, being seised of the premises in question, made his last will and testament, by which he bequeathed to his wife *Charlotte*, the defendant, twelve hundred and fifty dollars in cash, his horse and chair, all his household furniture; " and also that large and convenient dwelling-house, together with all the appurtenances and privileges thereunto belonging, situate in the village aforesaid, and the same which is now improved by me as a boarding house, so long as she shall continue and remain my widow, and also one undivided third of the aforesaid premises for ever."

*A. being seised of a house, with stables, yards, gardens, &c. and eighteen acres of land, adjoining, by his will, devised to his wife as follows: " and also that large and convenient dwelling-house, together with all the appurtenances and privileges thereunto belonging, and the same which is now improved by me, as a boarding house." It was held, that not only the barn, stables and out-houses, but the land, consisting of orchard, pasture, plough and*

wood land, all of which had been used by the testator, as appurtenant to his boarding house, and conducive to its support, passed by the will; especially, when, from the other parts of the devise, such was the evident intention of the testator.

" Second. I give and bequeath to my brother *James White*, all and every of my clothier's works, including two fulling mills, situate in said village about 1 1-2 mile north of my clothier's shop, which I do also give to the. said *James*, with two sets of tools," &c. " Also I give to the said *James* a legacy of 600 dollars; also the debts due to me from *Daniel Noble* and *Peter Dibble;* the aforesaid legacies to be paid to him on his arriving at 21 years of age; and on condition that he maintain my father, now living in said village, in every thing needful and necessary, for his convenience, during his natural life."

" Third. I give and bequeath unto the said *James*, and my beloved sisters, *Rachel* and *Mary*, two thirds of all the aforesaid described premises, bequeathed unto my wife *Charlotte*, to be enjoyed by them in equal parts, in case the said *Charlotte* should intermarry, or in case of her death, to have and to hold the same to them and their heirs for ever." The testator died the 23d *October*, 1808, leaving no issue. *John White*, the father of the testator, and his heir, was one of the les-sors.

The testator was a clothier, and purchased the place in question, about twelve years ago, and erected a shop and mills, and carried on the business extensively, until his death. The business of a clothier in that part of the country, is carried on in the spring and autumn, and does not interfere with the keeping of a boarding house, at the time visitors usually resort to the springs.

Three or four years after he made the purchase, the testator built additions to the house, and enclosed a convenient yard with a picket fence, and kept a boarding house for the accommodation of persons visiting the springs; and, frequently, had sixty or eighty boarders at a time. There is a large court yard in front extending to the highway. He also built a large stable, repaired the barn for stabling horses, and for a coach house. There was a gate at the corner of the house, through which was a passage to

the stables, &c. On the east and west side of the house there were several lots, occupied by the testator, in his life-time, as kitchen gardens, and enclosed with a picket fence. On the east side of the house lot is a way leading from the highway to the premises in question, principally occupied by *E. White*, jun.; the remaining part of the premises consisted of plough land, pasture, orchard and wood land.

Some years before his death, the testator enclosed a few acres of the wood and pasture land, with a picket fence, and put in two young deer, where, he said, would be a pleasant walk for his boarders. He occasionally used the enclosed land as pasture. On the plough land he raised vegetables for the use of his family and boarders ; and the wood land furnished some fuel, though not enough for his use. All the different lots opened into that part of his premises on which the barn and stables stand. The lot on which the house stands is large, and the house has been long kept as a boarding house at the springs. It may be used as such, without the premises in question; but with less convenience and advantage. The testator had no other property than what he devised by his will.

*Palmer*, for the plaintiff. The only question is, whether the words of the testator, in the devise to the wife, comprehend the premises in question. The devise ought to be clear and explicit, in order to disinherit the heir at law.* If there is any doubt, the rule of law, as to the estate, must take place. The will must be construed by the words of it, not from exterior circumstances;† and the heir at law will not be disinherited, unless it results by necessary implication.‡

The words of the will may be well satisfied by the dwelling-house and the adjoining lot, without taking the whole 18 acres. The land beyond the house lot and yard, is not appurtenant to the house.§ Appurtenant is confined to the buildings, curtilege, or garden belonging

* *Bowers* v. *Blackett, Cowp.* 235.
† 2 *Salk.* 935.
‡ *Swinb.* 355. 354.*note. Moore*, 7. pl. 24.
§ *Co. Litt.* 121. b. 122. a.

NEW-YORK,
May 1811.

JACKSON
v.
WHITE.

to the house. A devise of a messuage, with the appur-- tenances, does not include lands, though usually occu- pied with the house.

*H. Walton* and *Henry*, contra. We contend that the words of the will, if used in a deed, would pass the pre- mises in question.* The meaning of the word appurtenan- ces, depends on the subject. The boarding-house was the principal, or subject, and the premises the *accessory* or *inci- dent.* If the words would be sufficient in deeds and surren- ders, they must be so in a devise, for courts are much more liberal in the construction of wills, to give effect to the intention of the testator. The heir at law takes only what is not devised from him.† And when the intention is clear, the court will supply omissions, or correct mis- takes.‡ In *Clements* v. *Collins,*§ where the testator de- vised " the house he lived in and garden, to *B.*" the sta- bles, coal pen, &c. were held to pass, though used for the purposes of the testator's trade, as well as for the con- venience of his house. The court will take the word *appurtenances* in its popular and more extended sense, in order to give effect to the clear intent of the testator.¶ If outhouses and buildings are included in the word appurtenances, the land on which they stand must also be included.**

In *Carden* v. *Tuck,*†† it was held that by the devise of a *messuage*, a garden, and the curtilege passed, though the word appurtenances was not used by the testator. In *Smithson* v. *Cage,*‡‡ a messuage with the appurte- tenances was surrendered, and it was held that the or- chards, yards, curtilege and garden, passed with the house.

The word *premises* used in the last part of the will in- cludes the house and lands, and shows that the testator, by the word appurtenances, intended to include the land occupied with the house. The testator clearly did not intend to leave any thing to his father; but made ample provision for his support during life. He had no chil-

* *Com. Dig.*
*Grant,* E. 6. E. 9.
*Plowd.* 171.

† 1 *Burr.* 233.
*Gilb. on Dev.* 61.

‡ 5 *Burr.* 2703.
§ 2 *Term Rep.*
498.

¶ 1 *Bos. &*
*Pull.* 53. 2 *W.*
*Blacks. Rep.*
727, 728.

**3 *Wilson,* 141.

†† *Cro. Eliz.* 89.

‡‡ *Cro. Jac.* 529.

dren, and the devise shows that his wife was a favourite object in the disposition of his estate. Two thirds of what was devised to the wife was for her life only, or during her widowhood; in case of her death or second marriage, it went to the testator's two sisters, for ever.

*Per Curiam.* Taking the will together, it is apparent that the testator intended that the premises, claimed by the lessors of the plaintiff, should pass to his wife. He devises not only his dwelling-house, but " all the appurtenances and privileges thereunto belonging," and designates the subject devised, as " premises," and which he " improved as a boarding house." It was the *boarding-house establishment* that was intended to be devised, and every *privilege* appertaining to the use of it, and proper to render it convenient and attractive, as such an establishment, in such a place as *Ballston Springs.* The outhouses, the garden, the stables, the deer-park and the pasture, and the plough land, were all used by the testator as privileges appurtenant to his large boarding house, and conducive to its support and credit. They were all used by him towards that single object; and it is stated that he sometimes entertained from 60 to 80 persons. The case of *Doe* v. *Collins* (2 *Term Rep.* 498.) shows that stables and a coal pen will pass, in a devise, by the words *house* and *garden*, they having been used for the convenience of the house. In *Nicholas* v. *Chamberlain*, (*Cro. Jac.* 121.) a conduit and water pipes in adjoining land, were held to pass by the words *house, with the appurtenances*, because they were necessary and *quasi* appendant. The specific bequest of other parts of the estate of the testator to his brother, and the injunction that he should maintain his father, who now claims the premises, as one of the lessors, and the devise of part of the premises to his two sisters, after the death or remarriage of his wife, are corroborative of the intent that the premises should pass to the wife.

64

Upon the whole, we think that the general words are suffi-cient to convey the premises; and judgment ought to be rendered for the defendant.

Judgment for the defendant.