# SUPREME COURT.

## ABBY KENDALL agt. MARIETTA MILLER and others.

*Devise by will — of a farm — construction of clause.*

The testator, father of the defendant, by his will devised to Marietta
Miller "the farm on which John Fox now lives, * * * bounded
easterly and westerly by lands owned by M. D. Hall."

John Fox then occupied, under a written agreement with the testator,
about one hundred and forty-one acres of land, composed of three several
pieces or purchases, containing, in round numbers, one hundred, eighteen,
and twenty-three acres, respectively. The lot of eighteen acres, lying
between the others, bounded northerly by the hundred acres, on the
south-easterly corner by the twenty-three acres, which is a long narrow
strip extending to the south. A small portion only of each of the two
smaller lots were cultivated and used with the one hundred acres; the
remainder was wood-land. The one hundred acres upon which John Fox
resided contained all the buildings. Fox maintained the fences around
all the lots.

The question was whether the devise included only the one hundred acres,
or the three parcels. *Held*, that under the circumstances surrounding
the testator at the time, he undoubtedly intended to and did devise all
the land used and occupied by John Fox to his daughter Marietta Miller,
the defendant, and that no portion of the one hundred and forty-one
acres could be partitioned in this action.

*Chemung Special Term, April 21, 1874.*

ACTION to partition several different parcels of land. The
defendant, Marietta Miller, set up in her answer the exclu-
sive title to two of the parcels, under the last will and testa-
ment of her deceased father. The plaintiff and the other
defendants contended that title to the parcels in question did
not pass under the terms of the devise. This was the only

question in the case. The other facts are sufficiently set forth in the opinion of the court.

*S. L. Rood,* for plaintiff.

*M. J. Sunderlin,* for defendant, Marietta Miller.

*B. W. Woodward,* for the other defendants.

COUNTRYMAN, *J.*—There is only one question presented for consideration, which is, the true construction to be given of the clause in the will devising to Marietta Miller "the farm on which John Fox now lives, * * * bounded eastwardly and westwardly by lands owned by M. D. Hall."

It appears from the evidence that John Fox then occupied, under a written agreement with the testator, about 141 acres of land, composed of three several parcels or purchases, containing, in round numbers, one hundred, eighteen, and twenty-three acres, respectively. The lot of eighteen acres lies between the others, bounded northerly by the hundred acres, and on the south-easterly corner by the twenty-three acres, which is a long and narrow strip extending to the south. The testator was also the owner of several hundred acres of other land, but none of it adjoined or was in the immediate vicinity of the lots in question. The principal portions of the two smaller lots were wood-land, though a few acres of each had been cultivated, and larger portions were used in connection with the main parcel of 100 acres (on which John Fox resided, and all the buildings were located) for mowing grass and pasturing the farm stock. Fox also maintained the fences around all the lots. M. D. Hall owned land lying along the entire easterly line of the eighteen and the hundred-acre lots, and he also owned land lying along nearly the entire westerly line of the hundred acres, and the greater portion of the westerly line of the eighteen acres; but he owned no land which bounded or adjoined any portion of

the twenty-three acres.   The precise question is, whether the devise only included the 100 acres on which John Fox *resided*, or the 118 acres *bounded* eastwardly and westwardly by the lands of M. D. Hall, or the entire three parcels of 141 acres which John Fox *occupied*.

The subject of the devise is "the farm," and whatever may properly pass under that designation; and the rest of the language used by the testator is merely for the purpose of identity or description.   According to Blackstone, "farm, or feorme, is an old Saxon word signifying provisions; and it came to be used instead of rent, or render, because anciently the greater part of rents was received in provisions—in corn, in poultry, and the like—till the use of money became more frequent; so that a farmer, firmarius, was one who held his lands upon payment of a rent, or feorme; though at present, by a gradual departure from the original sense, the word farm is brought to signify the very estate or lands so held upon farm, or rent" (2 *Black. Com.*, 318).   In more modern times the word farm has received a still more extended signification, and now denotes, in this country, both in a popular and legal sense, a considerable tract of land, devoted, in part at least, to cultivation, with suitable buildings, and under the supervision of a single occupant, regardless of the nature or extent of his tenure (1 *Burrill's Law Dic.*, 605, title FARM, *and cases cited*).   Any considerable tract, or a number of smaller tracts of land, set apart for cultivation by a single occupant, whether as a tenant or owner, and upon which he resides, even though disconnected and separated by the lands of adjoining owners, if used together, would be regarded as constituting a single farm; and, if sufficiently identified, the whole would undoubtedly pass under the word "farm," in a testamentary devise (*Goodtitle* agt. *Southern*, 1 *Maule & Sel.*, 299; *Goodtitle* agt. *Paul*, 2 *Burr.*, 1089; *Jackson* agt. *White*, 8 *Johns.*, 59).   When, therefore, the testator purchased the several parcels of land in question and united them under the occupation and control of one person, they clearly became, in

the language of the country, a single farm; and in afterward designating the land thus occupied as a farm and referring to it under the name of the occupant, the owner must have intended, and would be commonly understood to include, all three of the original parcels.

The subject of the devise is identified in the will as " the farm on which John Fox now *lives.*" There is no force in the suggestion that this language merely refers to the main parcel of 100 acres on which the buildings are located, and where he therefore resides, even if we restrict the meaning of the word " lives " and consider it as only equivalent to " dwells," or " resides, " because each of the lots is a part of the farm; and when the occupant is referred to as living, or dwelling, or residing on the farm, they are all necessarily included and referred to under that designation. But I apprehend that the word " lives " was really used by the testator in the more general sense of "subsisting," or " obtaining a livelihood," on the farm; and while a more restricted meaning would not be inconsistent with, this extended signification would serve to strengthen the view or construction already adopted, as John Fox, in fact, occupied and obtained his livelihood from all the lots, as one farm.

. The testator, however, was not content to identify the subject of the devise, but, by way of additional description, referred to the farm as " bounded eastwardly and westwardly by lands owned by M. D. Hall." This description would not sustain either construction contended for on the argument. It would neither limit the farm, as devised, to the main parcel, nor include the twenty-three acres, but would clearly embrace the two northerly lots, containing, together, 118 acres. This reference to the boundaries of the farm—if entitled to any weight—clearly demonstrates that the testator did not intend to limit the gift or devise to the main lot, on which John Fox then resided. But the subject of the devise, when clearly identified in the will, is never limited or controlled by any additional description which turns out to

Kendall agt. Miller.

be erroneous. Where the intention of the testator is apparent and the subject of the gift can be clearly ascertained, any additional description, not inserted as an evident restriction or limitation of the devise, which is found to be erroneous, will be rejected as surplusage (*Doe* agt. *Roe*, 1 *Wend.*, 541; *Van Kleeck* agt. *Dutch Church of New York*, 20 *Wend.*, 492–494, 503–506; *Goodtitle* agt. *Paul*, 2 *Burr.*, 1089; *Woods* agt. *Moore*, 4 *Sanf. Sup. C. R.*, 579).

Keeping in view the canons of interpretation which obtain in the construction of these instruments, and reading the language of this will in the light of the circumstances surrounding the testator at the time, I am led to the conclusion that he intended to and did devise all the land used and occupied by John Fox to his daughter, the defendant, Marietta Miller. It follows, that no portion of the 141 acres of land can be partitioned in this action.

Judgment accordingly.