82   117<br>4ap323

J. MILFORD ANDREWS and Another, Respondents, *v.* BELLE N. WHITNEY and Another, Appellants, Impleaded, etc.

*Divorce — alimony — what surplus income can be reached by a judgment creditor's suit — time of creation of the debt.*

The surplus income resulting from a trust fund created for the benefit of a judgment debtor, which can be reached by her creditors, is that which is beyond what is necessary for the suitable support of the debtor, and those dependent upon her, in the manner in which they have been accustomed to live.

In an action for divorce the amount of alimony is fixed, having special reference to the manner in which the wife has been accustomed to live, and such a sum is determined upon as is suitable for the support of the wife, having regard to the circumstances of the respective parties, and if in a creditor's suit the question as to what is a suitable sum for the maintainance of the wife can be reconsidered at all, there must be kept in special view, in the reconsideration thereof, the manner in which the wife has been accustomed to live.

The effect of the existence of a trust fund, to the income of which (in addition to the alimony) the wife is entitled, considered.

*Semble,* that a creditor, whose debt was contracted and in existence before the date of the decree, in an action brought by the judgment debtor to secure an absolute divorce from her husband, cannot reach alimony awarded to the wife thereby.

APPEAL by the defendants, Belle N. Whitney and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Onondaga on the 15th day of February, 1894, upon the report of a referee, with notice of an intention to bring up for review on such appeal said judgment.

*Wm. G. Tracy,* for the appellants.

*Kennedy & Ross,* for the respondents.

MERWIN, J.:

This action is in the nature of a creditor's bill, and is based on a judgment recovered by the plaintiffs against the defendant Belle N. Whitney on the 5th day of June, 1893, for $341.33 damages, besides costs. The recovery was on a note which was given for a balance of an account for groceries furnished by plaintiffs to the defendant. The account commenced in September, 1891, and ended in November, 1892. The total of the purchase was $674.84, and payments from time to time were made to the amount of $347.15.

Prior to May 13, 1889, the defendant Belle N. Whitney was married to the defendant James W. Whitney and resided with him in the city of Rochester. The defendant Belle Augusta Whitney lived with them. She was the daughter of Mrs. Whitney by a prior marriage, and was, in May, 1889, about fifteen years old. Shortly prior to May 13, 1889, Mr. and Mrs. Whitney separated, and at that date an agreement of separation was made, the defendant Ashley being the party of the third part or trustee.

By the second clause of this agreement Mr. Whitney agreed to pay to Mrs. Whitney, for her support and maintenance, during the time she should remain his wife or widow, or during her life, if she should not marry until after his death, the annual sum of $3,000 in equal monthly payments in advance. He also agreed to place in the hands of the trustee the sum of $8,000, to be used by him in the purchase of a dwelling for the occupancy of Mrs. Whitney, the title to be in the trustee as such, and he to allow Mrs. Whitney to occupy it as long as she should live. If, however, she should prefer to rent a dwelling, or if, after a dwelling was procured, she gave up its use, it was then the duty of the trustee to invest the said $8,000, or the proceeds of sale of any dwelling that had been purchased, and pay

over to Mrs. Whitney during her life the income derived from the fund. Upon her death the fund should be transferred by the trustee to the daughter Belle Augusta for her own use and benefit. By the fifth clause of the agreement security for the payment of the annuity was provided for by mortgage to the trustee on certain real estate, and the trustee covenanted to indemnify Mr. Whitney against his common-law liability for the support of Mrs. Whitney. By the eighth clause Mrs. Whitney agreed that she would at any time, upon request, release her inchoate right of dower in any of the property of Mr. Whitney by joining with him in any conveyance or mortgage thereof, or in such other manner as would effectually release the same, and such release was declared a condition precedent to the payment of any installment of the annuity falling due after any refusal to execute such release, and it was agreed between all the parties that the provision for Mrs. Whitney was ample and sufficient, and was accepted by her as sufficient for her maintenance and support, and in lieu of all dower or right of dower or share in the property or estate of Mr. Whitney, and that she should not have or claim any dower in his estate. By the ninth clause certain policies of insurance on the life of Mr. Whitney were assigned to the trustee, Mr. Whitney agreeing to keep up the premiums, and when the policies became payable the trustee to collect the moneys due and hold the same for the benefit of Belle Augusta Whitney.

Since this agreement the parties have lived separate. Mr. Whitney made the annuity payments up to February 1, 1893. He furnished the $8,000 fund, but no dwelling house was purchased, Mrs. Whitney preferring to have the income of the fund. The fund was invested by the trustee, and the income was paid to Mrs. Whitney prior to April 1, 1893.

On January 1, 1893, Mrs. Whitney commenced in the Supreme Court an action against her husband for an absolute divorce for principal cause. No defense was made, but prior to the decree there were negotiations on the subject of alimony, and the provisions in the decree were agreed upon by the parties. The usual judgment for divorce was entered on the 21st of February, 1893. Upon the subject of alimony it provided that the defendant therein pay to the plaintiff therein the sum of $3,000 a year from March 1, 1893, during her life, as a suitable allowance to her for her main-

tenance and support, and that this be paid in monthly payments by the defendant therein to William J. Ashley, as trustee for the plaintiff therein, and then paid by the trustee to the plaintiff. Ashley was in the decree appointed trustee of Mrs. Whitney for the purposes of the decree, and the defendant therein was required to give to the trustee, as security for the annuity, his bond and a mortgage on certain real estate therein specified. It was also adjudged that except as therein specifically provided, the decree should in no wise affect the agreement of May 13, 1889, " which said agreement shall remain unimpaired and in full force, except the provision in the second subdivision thereof for an allowance of $3,000 annually to the plaintiff in this action, and also excepting the fifth subdivision thereof, all of which subdivision is hereby abrogated and annulled." And it was provided that " the said plaintiff and her said trustee surrender and pay over to the defendant all the money and securities held by said trustee under said agreement, except the sum of $8,000 provided for by clause 4 of said agreement, and the life insurance and policies therefor mentioned in the ninth clause thereof, and that the defendant release to said trustee and to Belle Augusta Whitney, daughter of said plaintiff, all his interest in or control over said sum of $8,000."

On the same day that the decree was entered an indenture of release between Mrs. Whitney, as party of the first part, and Mr. Whitney, as party of the second part, was executed and acknowledged, in and by which, after a reference to the judgment of divorce that day entered, and a recital that the party of the first part had agreed, for the consideration therein stated, to make the release pursuant to chapter 616 of the Laws of 1892, the party of the first part in consideration, as therein stated, of the sum of $4,500 to her paid, the receipt whereof was thereby acknowledged, released to the party of the second part all her inchoate right of dower in any real estate of which he was seized at the time of the granting of the judgment of divorce, or had since acquired, and also all the interest and estate which she had or could have in his estate, real or personal, as his former wife, or which should in any event come to her as his wife or widow if the judgment of divorce had not been granted. It was stated that the agreement of May 13, 1889, should not in any manner be affected except so far as it was modified by the divorce

judgment. The party of the second part in the release, "in consideration of the execution hereof by the party of the first part," released and assigned " to the party of the first part, and to William J. Ashley, as her trustee, and to Belle Augusta Whitney, daughter of the party of the first part, all his interest in or control over the sum of eight thousand dollars now in the hands of said William J. Ashley, trustee mentioned and referred to in said judgment."

Prior to the granting of the decree of divorce Mrs. Whitney had become indebted to divers persons in about the sum of $10,000, and she was insolvent. The $4,500 referred to in the release was paid by Mr. Whitney to the attorneys of Mrs. Whitney, and it was used by them in paying their charges against Mrs. Whitney, and in paying or compromising some of her debts. On or about April 1, 1893, Mrs. Whitney transferred to Belle Augusta Whitney all her interest in the $8,000 trust fund. This transfer was made in connection with an application by or on behalf of Belle Augusta Whitney to the Supreme Court for an authority and direction to the trustee to pay over to her from the principal of that fund the sum of $700 for the purpose of paying bills, incurred by her or on her behalf, to that amount for clothing and other necessaries, and also such further sum from time to time as might be necessary for her support and maintenance. Notice was given to the trustee, and the court made an order on April 1, 1893, authorizing the trustee to pay to said Belle Augusta Whitney from the principal of the fund the sum of $700 to defray the bills referred to. On the 6th of May, 1893, on similar application, an order was made directing the trustee to pay over the income of the fund to Belle Augusta, and on the 20th of May, 1893, another order for the trustee to pay over to her $125 of the principal for the payment of past bills, and thereafter pay to her $100 a month for her education and support until the further order of the court. So that at the time of the commencement of this action, on the 30th of June, 1893, the principal of the $8,000 trust fund was reduced to about the sum of $6,700.

The referee found that the transfer from Mrs. Whitney to her daughter of her interest in the $8,000 trust fund was made with intent to hinder, delay and defraud creditors, and, therefore, void as to plaintiffs; that " the sum of $200 a month is a proper and

sufficient, sum for the support and maintenance of the defendant Belle N. Whitney, and those dependent upon her for their support;" that the plaintiffs "are entitled to recover, and have and receive the interest and income on said sum of $8,000, or what remains thereof, and the sum of $50 per month from the alimony allowed to said Belle N. Whitney until the plaintiffs' claim, with the cost and interest, are fully paid." Upon this basis the judgment appealed from was entered.

The first question to be considered is whether the judgment can be sustained so far as it appropriates to the use of the plaintiffs a portion of the alimony allowed by the decree of divorce. There are, as it seems to me, two effectual reasons against it:

1. The principle of the case of *Romaine* v. *Chauncey* (129 N. Y. 566) is against it. In that case it was held that a creditor, whose debt was contracted and in existence before the date of the decree, could not reach alimony awarded to the wife by the decree. It is, however, claimed that the alimony provided for by the decree is but a continuation of the provisions in the agreement of separation ; that the plaintiffs' debt was incurred after that agreement and in reliance on its provisions, and that, therefore, the rule in the *Romaine* case should not apply. By the decree, the provision of the agreement as to the $3,000 a year was abrogated. The security was on other property. The scope of the allowance was different. In the agreement it was conditional upon Mrs. Whitney not marrying again during the life of Mr. Whitney. In the decree it was absolute. In the agreement the trustee agreed to indemnify the husband against certain liabilities. That was done away with by the decree. In the agreement the allowance was in part in consideration of her releasing upon request her inchoate right of dower, and was to be accepted in lieu of dower or share in the property or estate of her husband. There is no such condition in the decree. The release of right of dower was provided for by another instrument, and for a consideration entirely outside of the decree. The sum of $4,500 was paid by Mr. Whitney to assist Mrs. Whitney or her attorneys in arranging her debts. This is stated in the release to be its consideration. The referee finds that only a portion of the sum of $4,500 was for such release, and the remainder was for other considerations. So that we must assume that the annual allowance

in the decree was alimony pure and simple. It is clear that it was so intended. It came from the husband and was intended only for future debts. Mr. Whitney was not liable for the plaintiffs' debt. He made all the payments the agreement called for. I think that the rule of the *Romaine* case applies.

2. In appropriating a portion of the alimony to the use of the plaintiffs, the theory of the court below evidently was that the alimony and the income of the balance of the $8,000 trust fund should all be taken as the income of a trust fund, and that the surplus of such income, beyond the sum that may be necessary for the support and maintenance of Mrs. Whitney and those dependent upon her for their support, can be reached under the provisions of the Revised Statutes as to uses and trusts. (4 R. S. [8th ed.] 2438, § 57.) The case of *Williams* v. *Thorn* (70 N. Y. 270) is referred to on the general proposition though not a case like the present. Assuming that the statute may be applicable to this case, the question then is whether the proper rule has been applied in order to ascertain the surplus. In the *Williams* case it is said by Judge RAPALLO, with the apparent approval of the entire court, that the surplus which can be reached by creditors is that which is "beyond what is necessary for the suitable support of the debtor and those dependent upon him, in the manner in which they have been accustomed to live." This rule was applied in the subsequent conduct of that case. The counsel for plaintiffs on this subject refers to *Tolles* v. *Wood* (16 Abb. N. C. 1, 16), where it is said by Chief Judge RUGER that "neither the manner in which the party has been accustomed to live, or the style in which his associates and acquaintances expect him to live, furnishes a just criterion for determining the amount necessary to provide a suitable support for the *cestui que trust*." These views do not seem to have been adopted by a majority of the court. (See same case, 99 N. Y. 616.) Besides, that case was materially different from the present. In a divorce case the amount of alimony is fixed having special reference to the manner in which the wife has been accustomed to live. A sum is fixed suitable for the support of the wife having regard to the circumstances of the respective parties. (Code Civ. Proc. § 1759.) If, in a creditor's suit, this question can be reconsidered, it would certainly be appropriate to have in special view the man-

ner in which the wife had been accustomed to live. That was not done in this case. The evidence offered by the plaintiffs on that subject is not on that basis, nor does the finding of the referee purport to be on that basis. Nor can we properly infer a finding that on this basis will sustain the judgment. The evidence, so far as it goes, as to the amount necessary for her suitable support, according to the rule laid down by Judge RAPALLO, would indicate that the sum fixed by the referee as a proper and sufficient sum was too small.

The further question is whether the judgment can be sustained as to the income of the $8,000 trust fund. The right of Mrs. Whitney to that income is founded on the agreement of separation. If, as the plaintiffs claim, the transfer of this income was invalid, and the income inalienable (*Tolles* v. *Wood*, 99 N. Y. 617), and the surplus reachable under the statute above referred to, then the same trouble arises as to the method in which the sum suitable for Mrs. Whitney's support was arrived at. If the amount of the alimony can be taken into account in determining whether the income of the $8,000 trust fund is necessary for the suitable support of Mrs. Whitney and those dependent upon her, then the element of the manner in which she has been accustomed to live should be considered.

These considerations lead to a reversal. There are some other questions in the case, but they need not now be considered, as upon a new trial they may appear in a different light or not at all.

If the transfer by Mrs. Whitney was fraudulent and there is a surplus, within the rule laid down in the *Williams* case, having in view the entire income of Mrs. Whitney both under the decree and the prior agreement as modified by the decree, I see no good reason why the plaintiffs under the circumstances of this case so far as they now appear should not have some relief as to the income of the balance of the $8,000 fund. If Mrs. Whitney takes the position that she still has the right to require the purchase of a dwelling, then the question may arise whether she has not abandoned that right. If she has not, still the question would arise whether the plaintiffs cannot reach the income until that right is asserted. These questions need not be determined here.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed and a new trial ordered, costs to abide the event.