WILLIAM M. PRUYN and JOHN S. BAKER, as Executors and Trustees under the Will of THOMAS A. SEARS, Deceased, Plaintiffs, *v.* JENNIE A. SEARS et al., Defendants.

(Supreme Court, Oneida Special Term, July, 1916.)

Wills — execution of — general rule — devise — what constitutes ademption of legacy — trusts — Personal Property Law, § 16 — Real Property Law, §§ 61, 96, 104, 105 — partition.

While the general rule is that a will speaks from the death of the testator, in order to arrive at his intention it is proper to consider conditions as they existed when the instrument was drawn.

Testator left him surviving his widow and three sons, the eldest of whom was about twenty-four years of age and married, to whom a child was born after the death of testator, whose other sons are aged respectively eighteen and fifteen years. Testator by a will executed six years before his death devised to his wife the family residence and bequeathed to her an annuity and made a bequest to a friend of certain shares of stock of the S. & P. Co. The rest, residue and remainder of his estate he devised and bequeathed to his executors and trustees, in trust to collect and receive the income, rents, issues and profits therefrom and out of such income to pay all costs and expenses of executing the trust, including the sum of $300 annually to each of his trustees in lieu of commissions, and also the sum of $600 annually to his wife in monthly payments of $50 each during her life or widowhood, and out of the remainder of said income to pay and apply the same, or so much as said trustees in their discretion might deem necessary and proper, toward the care, support, maintenance and education of the testator's three sons until the final distribution of the trust fund as directed in said will. The will then provided for equalizing the amounts to be paid to each of said sons and directed that upon the death or remarriage of his wife his estate should be divided into three separate parts as nearly equal as might be, taking into consideration the amounts advanced for the use of each of said sons, each of which parts should constitute a separate trust fund for the benefit of each of said sons, or if either of said sons should be dead at that time then the estate to be divided into as many shares as there were surviving sons after equalizing the same as above set forth, and to keep said separate trust funds invested and pay the net income therefrom quarterly to each of said surviving sons until they respectively reached the age of twenty-five years, or if they reached that age before her death or remarriage then until her said death or remarriage, and that upon arriving at that age or if it occurred before her death or remarriage then at her death or remarriage to pay and turn over to said beneficiaries the trust fund so held for their benefit with all accumulations thereon.

The will further provided that said trustees should retain the interest and share of the testator in the S. & P. Co. until the termination of the trust or until such time as in their judgment and discretion they might determine that the business was un-

profitable and unremunerative; in that event they were authorized to sell and dispose of the same and invest the share thereof which belonged to the testator.

The will also provided that if in the judgment of said trustees any of his sons were not leading a wise or useful life they might withhold the payment over to him of such trust fund on his arriving at the age of twenty-five years, or the death or remarriage of his wife, and to hold such trust fund and continue to pay over to such beneficiary the income only until such time as said trustees should be satisfied that such beneficiary was entitled to be entrusted with the same.

The testator left an estate of about $142,000 and was indebted about the sum of $20,000, and included in the estate was the house and lot devised to his wife of the value of about $12,000, thus showing net assets in the hands of the trustees amounting to about $110,000, which produces an annual income of about $12,000. At the execution of the will there was a barn in the rear of the family residence, but upon the same lot, which was used for purposes incidental to the family residence. In an action brought for the judicial construction of the will, held, that the use of the barn passed to the wife for her life or widowhood.

That it appearing that at the time of the execution of the will there was a corporation called S. & P. the business of which was closed up later, the corporation dissolved and a new corporation by the name of S. & P. Inc. organized, to which all the assets of the old corporation were transferred, it will be assumed that testator in making the legacy of corporate stock had in mind the stock he held in the S. & P. Co. and that the change in the corporate business did not constitute an ademption of the legacy which was general.

That the trust in the residuary estate was valid, there being no persons in being by which such an absolute estate in possession of the trust property could be conveyed, as the interest of the beneficiaries is made inalienable by sections 104 and 105 of the Real Property Law, and a conveyance of the trust estate by the trustees would be contrary to the purposes of the trust.

That separate trusts being provided for upon the death or remarriage of testator's widow the period of the continuance of said trusts was to be determined by reference to each particular trust.

Under the well-settled rule that where the purpose of a trust ceases the estate of the trustee ceases also and that a trust

terminates when there ceases to be a beneficiary capable of calling for the enforcement of the same, a trust for the benefit of a son of testator, to continue until he arrives at the age of twenty-five years, is conditional upon his reaching that age, and as the duration of the separate trusts for testator's sons could not exceed two lives in being, viz., that of testator's wife and of each individual beneficiary, there was no infraction of the statute against perpetuities.

That in the circumstances there was an implied direction that the trustees hold the property for the purpose of accumulations of the balance of the income, and the same not being for the benefit of the infants during their minority was within the condemnation of the statute (Personal Property Law, § 16; Real Property Law, §§ 61, 96), but such implied direction to accumulate the income only invalidates the trust to the extent that such accumulations are unlawful.

That as the rights of the adult son are liable to be cut off by his death during the life or widowhood of his mother he could not be said to be the owner of the next eventual estate and was not, therefore, entitled under the statute to take the rents and profits, there being no valid direction for their accumulation.

That as the sons of testator were not by the terms of the will made owners of the next eventual estate and there was no residuary clause the accumulations of income must be regarded as undisposed of assets and divided yearly among testator's wife and his next of kin under the statute of distributions.

That the question whether upon a division of the estate the sum paid for the support of the married son should be taken into consideration in making the equitable division contemplated by the will ought not to be determined until that event arises when all the interested parties can be fully heard upon the subject; such course should also be pursued with regard to the right of succession in case any son died subsequently to the death or remarriage of testator's wife and before payment to him of the trust fund.

ACTION for the judicial construction of the will of plaintiffs' testator.

Oswald P. Backus, for plaintiffs.

W. W. Byam, guardian *ad litem*, for infant defendants.

EMERSON, J. Thomas A. Sears died in Rome, Oneida county, on October 4, 1915, leaving the defendant Jennie A. Sears, his widow, and three sons him surviving. His oldest son, Floyd, who was then about twenty-four years of age and was married, has had a child born to him since the death of Sears. The two other sons, Howard and Kyle, were then and still are infants, being respectively eighteen and fifteen years of age. The decedent left a last will and testament which was executed on March 9, 1909, whereby he devised to his wife his family residence at No. 207 West Embargo street, Rome, during her life or widowhood, and an annuity of $600 per year payable $50 per month, and to Daniel N. Cross, of Bombay, thirty shares of the capital stock of the Sears & Pruyn Company of Rome, N. Y. All the rest, residue and remainder of his estate he devised and bequeathed to the plaintiffs, his executors and trustees, in trust to collect and receive the income, rents, issues and profits therefrom and out of such income to pay all costs and expenses of executing the trust, including the sum of $300 annually to each of his trustees in lieu of commissions, and also the sum of $600 annually to his wife in monthly payments of $50 each during her life or widowhood, and out of the remainder of said income to pay and apply the same, or so much as said trustees in their discretion might deem necessary and proper, toward the care, support, maintenance and education of the testator's three sons until the final distribution of the trust fund as directed in said will. The will then provided for equalizing the amounts to be paid to each of said sons and directed that upon the death or remarriage of his wife his estate should be divided into three separate parts as nearly equal as might be, taking into consideration the amounts advanced for the use of each of said sons, each of which parts should constitute a

separate trust fund for the benefit of each of said sons or if either of said sons should be dead at that time then the estate to be divided into as many shares as there were surviving sons after equalizing the same as above set forth, and to keep said separate trust funds invested and pay the net income therefrom quarterly to each of said surviving sons until they respectively reached the age of twenty-five years, or if they reached that age before her death or remarriage then until her said death or remarriage, and that upon arriving at that age or if it occurred before her death or remarriage then at her death or remariage to pay and turn over to said beneficiaries the trust fund so held for their benefit with all accumulations thereon.

The will further provided that said trustees should in their discretion retain the interest and share of the testator in the Sears & Pruyn Company until the termination of the trust or until such time as in their judgment and discretion they might determine that the business was unprofitable and unremunerative; in that event they were authorized to sell and dispose of the same and invest the share thereof which belonged to the testator.

It was also provided that if in the judgment of said trustees any of his sons were not leading a wise or useful life they might withhold the payment over to him of such trust fund on his arriving at the age of twenty-five years, or the death or remarriage of his wife, and to hold such trust fund and continue to pay over to such beneficiary the income only until such time as said trustees should be satisfied that such beneficiary was entitled to be entrusted with the same.

The evidence shows that the testator left an estate of about $142,000 and was indebted about the sum of $20,000. Included in the estate thus left by him was the house and lot devised to his wife of the value of

about $12,000, thus showing net assets in the hands of the trustees amounting to about $110,000, which produces an annual income of about $12,000.

The first question that arises relates to the construction of the devise to the wife of the family residence during her life or widowhood. The evidence shows that the residence faces West Embargo street and in the rear of the residence, but upon the same lot, is a barn which faces a street running alongside said residence. At the time the will was drawn in 1909 this barn was used for the testator's team of horses and his automobile, but later and at his death it was used for the purpose of storing and the sale of automobile accessories by one of the testator's sons. The trustees now desire the instruction of the court as to whether the barn passed under the devise of the family residence to the wife. It seems to me entirely clear that it so passed. While the general rule is that a will speaks from the death of the testator in order to arrive at the intention of the testator it is proper to consider the conditions as they existed when the will was drawn. *Doe* v. *Provoost,* 4 Johns. 61, 63; *Shulters* v. *Johnson,* 38 Barb. 81; *Bumpus* v. *Bumpus,* 79 Hun, 526; *Stimson* v. *Vroman,* 99 N. Y. 79.

Thus fortified with information it appears that the testator must have regarded the barn as part and parcel of the residence property. It was built upon the same lot and was used for purposes incidental to the family residence. I, therefore, conclude that the use of the barn passed to the wife for her life or widowhood under the second clause of the will.

The next question relates to the legacy to Daniel N. Cross of thirty shares of the capital stock of the corporation known as Sears & Pruyn of Rome, N. Y. Upon this subject the evidence shows that at the time the will was drawn there was a corporation called Sears

& Pruyn doing business at Rome and Watertown, but later the Rome business was closed up, the corporation dissolved and a new corporation of the name of Sears & Pruyn, Inc., organized doing business at Watertown only, to which new corporation all the assets of the old corporation were transferred. Assuming that the testator in making this legacy had in mind the stock he then held in the Sears & Pruyn Company, I do not think the change in the corporate business constituted an ademption of the legacy even though it be regarded as specific. *Walton* v. *Walton,* 7 Johns. Ch. 258, 265.

But on the contrary the legacy was general and the rule as to ademption in such cases is much less rigorous. *Gardner* v. *Printup,* 2 Barb. 85; *Beck* v. *McGillis,* 9 id. 35, 56–59; *Crawford* v. *McCarthy,* 159 N. Y. 514, 519; *Matter of King,* 122 App. Div. 354.

It is, however, a sufficient answer to the question to say that the legacy refers to such stock in the Sears & Pruyn Company as the testator might possess at his death, as the general rule is that the will speaks from that date and this case presents no exception to the rule. *Brundage* v. *Brundage,* 60 N. Y. 544, 549; *Waldo* v. *Hayes,* 96 App. Div. 454.

But by far the more important and difficult question relates to the validity of the trust which the testator declared in the residue of his property. The statute declares that the absolute power of alienation shall not be suspended for more than two lives in being at the time the estate is created and that such power of alienation is suspended when there are no persons in being by whom an absolute estate in possession can be conveyed. Pers. Prop. Law, § 11; Real Prop. Law, § 42; *Sawyer* v. *Cubby,* 146 N. Y. 192.

It is clear that there are no persons in being by which such an absolute estate in possession of this trust prop-

erty could be conveyed as the interest of the beneficiaries is made inalienable by statute and a conveyance by the trustees of the trust estate would be contrary to the purposes of the trust. Real Prop. Law, §§ 104, 105; *Garvey* v. *McDevitt,* 72 N. Y. 556; *Haynes* v. *Sherman,* 117 id. 434.

It seems to me, however, that the provisions of the will do not suspend the absolute power of alienation for more than two lives in being. Reading its provisions and construing it in the light of the testator's manifest intention it is quite evident that the trust was to continue during the life or widowhood of the wife and that when the above event occurs the property was to be divided into as many separate trusts as there were surviving children. If any of such children had then arrived at the age of twenty-five years their share of the trust fund was to be paid over to them, otherwise it was to be held in trust until they respectively arrived at that age, when it was to be paid over and the trust was to cease, provided, however, that for prudential reasons the trustees might in their discretion withhold the payment over of such trust fund during the lifetime of any beneficiary and in the meantime pay him the net income thereof. No provision is made for the disposition of the principal of the trust fund held for the benefit of any beneficiary who dies subsequently to the death or remarriage of the wife and before arriving at the age of twenty-five years, or when the payment of such principal is withheld by the trustees acting under the terms of the trust. The testator, therefore, provided for separate trusts upon the death or remarriage of his wife and thereafter the period of their continuance was to be determined by reference to each particular trust. *Moore* v. *Hegeman,* 72 N. Y. 376. Each separate trust was to continue until the beneficiary arrived at the age of twenty-five years

or until his death. If there had been a single trust held for the benefit of several beneficiaries and to continue until such time as a certain beneficiary would, if living, have arrived at the age of twenty-five years it would have unlawfully suspended the power of alienation as the limitation would not be determined by lives in existence but rather by a term of years. This was so decided in *Haynes* v. *Sherman,* 117 N. Y. 433.

But the case here presented is entirely different. A trust for the benefit of a beneficiary to continue until he arrives at the age of twenty-five years manifestly is conditional upon his arriving at that age, for it is a well-settled rule that where the purpose of a trust ceases the estate of the trustee ceases also and that a trust terminates when there ceases to be a beneficiary capable of calling for the enforcement of the same. Reap Prop. Law, § 109; *Levy* v. *Levy,* 33 N. Y. 107; *Bliss* v. *Fosdick,* 76 Hun, 509, 512; *Wilcox* v. *Gilchrist,* 85 id. 1, 12.

The duration of the trust could not, therefore, exceed two lives in being, namely, that of the wife and of each particular beneficiary, and consequently there was no infraction of the statute against perpetuities. With regard to the accumulations of income the statute provides that this can only be done for the benefit of minors and must terminate with the expiration of their minority. Pers. Prop. Law, § 16; Real Prop. Law, §§ 61, 96; *Matter of Hayden,* 77 Hun, 219; *Hawley* v. *James,* 5 Paige, 422.

The trust provides that the trustees shall receive the income of the trust property and, after paying certain charges thereon, apply the balance or so much as they think proper to the support of the three sons until the death or remarriage of the wife when they are to divide the fund and hold it in separate trusts for the survivors, paying them the income therefrom quarterly

14

until they respectively arrive at the age of twenty-five 'years when they are to pay over such fund with all accumulations, provided that in the discretion of the trustees they might withhold paying over the corpus of said separate trusts and only pay them the net income therefrom during their life or until such time as they think proper to pay over the same. It will be observed that up to the death or remarriage of the wife, no matter what the age of the beneficiary may be, the trustees are only to pay over such parts of the income as they think necessary for the support of the children. As the trustees are not directed as to the disposal of the balance of the income it necessarily follows that the same was to be accumulated and this the testator recognizes by the provision that when each son arrived at the age of twenty-five years the trust fund with all accumulations should be paid over. I think, under the circumstances of the case, there was an implied direction to the trustees to hold the property for the purpose of such accumulations and, the same not being for the benefit of infants during their minority, it was not authorized by the statute. *Craig v. Craig,* 3 Barb. Ch. 93; *Vail v. Vail,* 4 Paige, 317; *Hawley v. James,* 5 id. 481; *Phelps v. Pond,* 23 N. Y. 80; *Gilman v. Reddington,* 24 id. 19; *Cochrane v. Schell,* 140 id. 527; *Thorn v. DeBreteuil,* 179 id. 64, 74; *Matter of Harwood,* 52 Misc. Rep. 82.

At least such a condition was possible and so it comes within the condemnation of the statute. *Matter of Robinson,* 145 App. Div. 925; *Matter of Van Doren,* 77 Misc. Rep. 44; *Schettler v. Smith,* 41 N. Y. 328; *Haynes v. Sherman,* 117 id. 434, 437; *Matter of Wilcox,* 194 id. 288.

Such implied directions to accumulate the income from the trust property however only invalidates the trust to the extent that such accumulations are unlaw-

ful. *Williams* v. *Williams,* 8 N. Y. 538; *Kilpatrick* v. *Johnson,* 15 id. 322; *Hetzel* v. *Barber,* 69 id. 1, 8; *Cochrane* v. *Schell,* 140 id. 517, 536, 537; *Lowenhauft* v. *Stanisics,* 95 App. Div. 171; *Matter of Roos,* 4 Misc. Rep. 232; *Hafner* v. *Hafner,* 34 id. 66; *Central Trust Co.* v. *Egleston,* 47 id. 475.

If it was possible to uphold such accumulations as being for the benefit of the sons during their respective minorities that course should be pursued, but manifestly this could not be done without going contrary to the general purposes of the will which was to create equality between the children and, as one son was of age when the testator died, to permit the other sons to receive the accumulated income at their majority would create an inequality between them, especially as the rights of the adult son are liable to be cut off by his death during the life or widowhood of the wife he could not be said to be the owner of the next eventual estate and, therefore, not entitled under the statute to take the rents and profits where there is no valid direction for their accumulation. *United States Trust Co.* v. *Soher,* 178 N. Y. 443, 449, 450.

Herein this case differs from *Central Trust Co.* v. *Egleston,* 47 Misc. Rep. 475, where the adult son, being the owner of the next eventual estate, was entitled to be paid the accumulated income from his share of the estate and, therefore, would receive the same portion of the accumulations as the minor children. It follows that the accumulations cannot be upheld as being made for infants during their minority, and, therefore, such accumulations belong under the statute to the owners of the next eventual estate. Real Prop. Law, § 63; *Kilpatrick* v. *Johnson,* 15 N. Y. 322; *Gilman* v. *Reddington,* 24 id. 10; *Cook* v. *Lowry,* 95 id. 103; *Matter of Roos,* 4 Misc. Rep. 232.

The next eventual estate means the estate which is

to take effect on the happening of the event which terminated the accumulation. *Manice* v. *Manice,* 43 N. Y. 385.

And, as we have seen, the sons are not by the terms of the will made the owners of the next eventual estate and, as the will contains no residuary clause, it follows that such accumulations must be regarded as undisposed assets of the testator. The will seems to create an equitable conversion, and, therefore, such accumulations should be divided yearly among the wife and next of kin according to the provisions of the statute of distributions. *Vail* v. *Vail,* 4 Paige, 317; *Embury* v. *Sheldon,* 68 N. Y. 228; *Cochrane* v. *Schell,* 140 id. 517; *United States Trust Co.* v. *Soher,* 178 id. 443, 450.

The trustees also ask the instruction of the court as to whether the family of the married son should be supported out of the income of the trust estate. By the language of the will the trustees are to apply the income to the care, support, maintenance and education of the three sons until the division of the estate or the death or remarriage of the wife and thereafter to pay the net income of each share to such beneficiaries until they shall respectively arrive at the age of twenty-five years. I think the support of the family is clearly incidental to the care, support and maintenance of the beneficiary and that, therefore, it is the duty of the trustees to provide for the same. It has been so held under a statute authorizing creditors to reach the surplus income of a trust fund left for the support and education of a beneficiary and I know no reason why that principle should not be applied to this case. *Williams* v. *Thorn,* 70 N. Y. 270; *Tolles* v. *Wood,* 99 id. 617; *Andrews* v. *Whitney,* 82 Hun, 117, 123.

It is possible upon the division of the estate the additional sum thus paid for the support of the family of the married son should be taken into consideration in

making the equitable division contemplated by the testator, but this question ought not to be determined until that event arises when all the interested parties can be fully heard upon the subject. Such a course should also be pursued with regard to the right of succession in case any son died subsequently to the death or remarriage of the wife and before payment to him of the corpus of the trust fund.

A decree should be entered construing the will in question in accordance with this opinion and with leave to the trustees to apply to the court at the foot of the decree to be entered for further instructions in relation to the trust should such an exigency arise in the future. Findings may be accordingly prepared and settled before me on five days' notice. All questions as to costs are reserved until the settlement of said findings.

Ordered accordingly.