In the Matter of the Construction of the Will of MARGARET WOGGON, Deceased.

Surrogate's Court, Monroe County, December 30, 1949.

*William H. Trebert* for Herman A. Woggon, as executor of Margaret Woggon, deceased, petitioner.

*Barton Baker* for Helen M. DeRyke, respondent.

*George J. Skivington* for Albert A. Woggon, respondent.

WITMER, S. In this will construction proceeding it appears that the testatrix died on October 26, 1948, at the age of eighty-six years, leaving a will drafted by her family attorney and bearing date September 29, 1946, which has been duly admitted to probate.

She was survived by her five children; three boys and two girls. She designated the petitioner as executor of her will, and directed an equal division of her assets amongst her five children, after the payment of the debts and funeral and administration expenses. At first blush such a will seems eminently fair; but bitter animosity and litigation in the Supreme Court and in this court has arisen out of it. It appears that the respondent daughter, Helen M. DeRyke, lived with her father and mother prior to her marriage in 1918, and continuously thereafter during her mother's lifetime. She has filed a substantial claim against the estate for services rendered to the testatrix (who was suffering from cancer) during the last years of her life, and has brought suit on such claim in the Supreme Court. It is indicated to the court that the making of said claim is the reason for the failure of the parties to agree upon the construction of the will, which question is now presented for consideration. The making of such claim, however, has nothing to do with the merits of this construction proceeding.

At her death the testatrix owned two adjacent residence properties at numbers 476 and 480 Avenue A, respectively, in the city of Rochester, N. Y. The respondent, Helen DeRyke, lived with the testatrix at No. 480 Avenue A, and her brother, the respondent Albert Woggon, and family lived at No. 476 Avenue A. In paragraphs "Fifth" and "Sixth" of her will the testatrix provided as follows:

"*Fifth:* I am now the owner of two single residences known as 476 and 480 Avenue A, Rochester, New York. The former is now occupied by my son, Albert A. Woggon, the latter by my daughter, Helen M. DeRyke. Should either of my said children occupy either of said residences at the time of my decease, then he or she may have three months from date of probate hereof to elect to purchase same from my executor at the then fair and reasonable market value thereof and my executor shall sell same to him or her at such price. Should differences arise between my executor and either of my said children reference to agreement upon the fair and reasonable market value of such residence, then my executor and such child shall each appoint a real estate appraiser and the two appraisers so appointed shall appoint a third real estate appraiser, which three appraisers shall fix the then fair and reasonable market value of the premises. The figure so arrived at shall bind the disputing executor and said son or daughter in the event that said disputing child may thereafter yet wish to purchase the premises at the price so arrived upon. No undue delay shall be countenanced in connection with said appraisement procedure and the transfer of premises to either of said children electing to purchase same shall occur promptly, preferably within four months of date of probate hereof.

"*Sixth:* Until sale and disposition of my two residence properties my executor shall pay the real estate taxes, water rents and premiums for adequate fire insurance coverage thereon. My daughter Helen M. DeRyke shall have the privilege of occupying the 480 Avenue A residence free of charge until sold. My son Albert A. Woggon shall have privilege of occupying the 476 Avenue A residence until sold. The directions of the last two sentences preceding assuming said son and daughter are in possession of said premises as of date of my death."

Helen and Albert each gave immediate notice to the executor-petitioner of their election to purchase the respective properties referred to in the will. Helen's offer referred to the residence premises at No. 480 Avenue A as occupied, including the easterly

one-third section of a three-car garage on the rear of the premises at No. 476 Avenue A, and an easement of ingress and egress over a driveway wholly on the latter premises; and Albert's offer referred to the residence premises at No. 476 Avenue A as contained in a deed thereof to the testatrix and her husband and as shown on the plat book of the area. The matter of the price to be paid to the estate by the respective respondents does not seem to be an issue, each agreeing to pay in accordance with the provisions of the will. Since the executor obviously cannot convey to both as demanded, he has petitioned the court to determine precisely what property the testatrix intended each of said respondents should have the privilege of buying.

In order to ascertain such intent the court received evidence of the use made of the respective premises by the testatrix and by others with her consent at the time of the execution of the will, and the surrounding facts concerning the premises. The authorities support the taking of evidence for such purpose. (*Matter of Phipps*, 214 N. Y. 378; *Robertson* v. *Schermerhorn*, 47 Hun 637, opinion in 14 N. Y. St. Rep. 304; *Matter of O'Loughlin*, 187 Misc. 914.)

It appears that the testatrix and her husband in 1890 bought the house and lot at No. 480 Avenue A and lived therein until their respective deaths, the husband dying first. There was no garage on the lot, and the house occupied so much of the lot that without removing the porch on the west side (toward the premises at No. 476 Avenue A) there was no room for a driveway. The east wall of the house was and is about 2½ feet from the east lot line. (See Map of E. J. Fricker, stipulated in evidence.) The west wall of the house was and is 8⅔ feet from the west lot line; but a porch extending about 15 feet along the west side of the house and 5.1 feet westerly therefrom extends to a line about 3½ feet from the west lot line. The house has no door opening to the south onto the street, and the main entrance to the house is a door opening onto the said porch. The porch is four steps above the lot level, and is necessary for the use of such main door. There is room for a garage on the rear of the lot.

In 1915, the testatrix and her husband bought the residence premises at No. 476 Avenue A. At that time a fence separated the two properties, and there was no garage or driveway on the premises at No. 476 Avenue A. The west wall of the house on this lot was and is about 2½ feet from the west line of the lot and the east wall was and is about 17½ feet from the east lot line. The front entrance to this house is on the south side of

the house, towards the street. Upon purchasing this house and lot the testatrix' husband promptly removed the fence separating the two properties, and soon built a single garage on the premises at No. 476 Avenue A and a driveway running from the street to the garage, said driveway being located substantially midway between the two houses, as it is now. The respondent, Helen DeRyke, was married in 1918, and continued to live with her parents at No. 480 Avenue A. In the early 1920s Helen's husband began to operate a milk business using the garage for a place of business and the driveway for access thereto. This continued virtually without interruption until about 1928, when the single garage building was moved westerly on the rear of the premises at No. 476 Avenue A and a two-car garage was added on the east side thereof, making it a three-car garage. Helen's husband helped in the building of this garage. Thereafter for some years he used the double garage exclusively for his milk business, and used the driveway in connection therewith. After her husband discontinued the milk business he continued to use the easterly garage, that is, the east one-third unit of the three-car garage, it being the easterly half of the 1928 addition, and continued to use the driveway for access thereto. The respondent, Albert Woggon, moved into the premises at No. 476 Avenue A about the year 1931, and used the westerly part of said garage and used the driveway in common with the testatrix and her husband and Helen and her husband. The latter made some minor repairs upon the east garage section and the driveway, and did most of the snow shoveling to keep the driveway open in winter, although Albert, when able, sometimes shoveled snow from the westerly part of the driveway.

After Albert moved into the house at No. 476 Avenue A a cement walk was laid, running in an easterly and westerly direction parallel with the street, extending from the rear door of the house at No. 476 Avenue A to the rear of the house at No. 480 Avenue A. Cement curbs were laid along each side of the driveway, running from said cement walk southerly to the street. The driveway is 7.3 feet wide between said curbs. The east curb is 3.7 feet west of the east line of the lot on which the house at No. 476 Avenue A stands, and is 7.3 feet west of the porch at No. 480 Avenue A. The west curb is 6.5 feet easterly of the house at No. 476 Avenue A. A sidewalk about 2 feet in width runs along the east side of the house at No. 476 Avenue A, and a similar walk runs along the west side of the porch at No. 480 Avenue A. The testatrix and her husband and the respondent, Helen DeRyke and her husband, have always cared for the grass

and shrubbery between the sidewalk on the premises at No. 480 Avenue A and the east curb of the driveway.

The east unit of the garage is almost directly north of the driveway; and north of the walk running between the two houses is a driveway area, the west two thirds of which has been used exclusively by the respondent, Albert Woggon, for access to the two westerly units of the garage, and the easterly one third of which area, except for a small portion near the walk, was used exclusively by the testatrix and her husband and respondent, Helen DeRyke, and her husband, and still is so used by the latter two.

The east wall of the garage is about 2.6 feet west of the east lot line of the premises at No. 476 Avenue A, and the north wall is about 3 feet southerly of the north lot line. The east garage unit is about 11.2 feet wide and 18 feet deep, and there is a cement approach apron across the front of it extending southerly a distance of 4 or 5 feet.

The question is, did the testatrix intend that the said son and daughter should have the privilege of buying the respective residence premises at Nos. 476 and 480 Avenue A (1) in accordance with the legal description of the lots upon which the houses stand as contained in the deeds thereof to the testatrix and her husband and as shown on the plat book, or (2) in accordance with their respective actual occupations and uses of said premises in the testatrix' lifetime and particularly at the time of the execution of the will? The court holds that the latter was the testatrix' intent.

The testatrix and her husband were not lawyers, and there is no indication that the testatrix was thinking in terms of technical legal descriptions. On the other hand, when she and her husband bought the premises at No. 476 Avenue A, there was a line fence between their residence and such premises, and there was no garage on their residence premises and no room for a driveway without removing the porch, which would render useless the main door to the house. They promptly removed the fence, and soon erected a garage and built the driveway about half way between the two houses. For a time this garage and driveway were used exclusively with the premises at No. 480 Avenue A. Nearly twenty years before the testatrix made her will the single garage was moved westerly and a double garage was built onto the east side thereof. From the time of such building the east one-third unit of this garage has been used exclusively with the premises at No. 480 Avenue A, and the driveway has been used for ingress and egress in connection therewith. Since Albert

Woggon began in 1931 to occupy the premises at No. 476 Avenue A, the westerly two thirds of the garage has been used by him, and he has shared the use of the driveway with the occupants of the premises at No. 480 Avenue A. The testatrix and her husband, or the respondent, Helen DeRyke, and her husband, occupants of No. 480 Avenue A, attended to all of the grass and shrubbery east of the driveway, and kept the driveway open in winter, sometimes with the help of Albert and his immediate family, who shoveled some snow, principally from the west half of the driveway.

Under such circumstances it is apparent that the testatrix was thinking of the premises at No. 480 Avenue A as running to the driveway, with the right to use the driveway, and as running to the middle of the double garage added to the original single garage. Counsel have submitted no case bearing upon this specific problem. The court has found no cases directly in point, but has found some that are closely related and which point the way for the court's determination.

In *Davis* v. *Tremain* (69 Misc., 120, 123-126, affd. 145 App. Div. 902, revd. on other grounds 205 N. Y. 236) the testator devised '' my home, situate at 104 East Liberty Street * * * consisting of the lot with house and barn situated thereon ''. He owned the adjoining property at No. 106 East Liberty Street, but there were no monuments fixing the division line between the two premises. The court below held that the devisee should receive title (not merely an easement) to six feet of land adjacent to the buildings, and a twelve-foot driveway to the barn. The Appellate Division affirmed this determination. The Court of Appeals reverse on the ground that the appellant was entitled to have a jury trial of the question.

In *Pruyn* v. *Sears* (96 Misc. 200, 206) the testator devised his ''residence at No. 207 West Embargo Street '' to his wife. The question arose as to whether such device included the barn used by the testator with said residence, but which faced on another street. It was held that since the barn was used for purposes incidental to the family residence, it was included in the devise.

In *Ennis* v. *Grover* (53 Misc. 66, affd. 120 App. Div. 879, affd. 192 N. Y. 584) the testator devised a lot by map number. The map did not show the lot as running to the water's edge, but only to a roadway along the water front. The court held that the device included all of the adjacent wharfage easement rights lying between the lot as shown on the map and the water, although separated by the roadway.

In *Kendall* v. *Miller* (47 How. Prac. 446) the testator devised to J. Fox " the farm on which John Fox now lives ". J. Fox was working a farm of 141 acres owned by the testator which the testator had bought in three separate parcels of one hundred acres, eighteen acres and twenty-three acres, respectively. The house and buildings were on the one hundred acre parcel. It was held that the entire farm of one hundred and forty-one acres was included in the devise.

In *Gorton-Pew Fisheries Co.* v. *Tolman* (210 Mass. 402) the testator devised lands adjacent to an open right-of-way which he had used to gain access to the rear of such lands. There was room at the front of the premises to build a driveway for direct access to the rear of the lot, but it would require cutting down the grade and destroying much of the beauty of the premises. The court held that the testator intended to devise the land with the benefit of the easement over the right of way, just as he had used it in his lifetime.

The above cases support the view which the court entertains in this case. The testatrix' will is construed as granting to the respondent, Helen DeRyke, the right to purchase the title to three parcels of land, to wit, (1) the original lot upon which house No. 480 Avenue A stands, (2) the northeast portion of the lot upon which house No. 476 Avenue A stands, which will include the east one-third unit of the garage, particularly described as follows: Beginning at the northeast corner of said lot and running westerly on the north line thereof a distance of approximately fourteen feet to a point which a line running northerly and southerly through the center of the two-car garage addition to the original single garage will intersect; thence running southerly along said intersecting line through the middle of the two-car garage section of said garage and parallel with the east line of said lot, a distance of about twenty-seven feet to a point six feet southerly of the front of said garage; thence running easterly on a line parallel with the north line of said lot a distance of about 14 feet to the east line of said lot; thence running northerly on the east line of said lot a distance of about twenty-seven feet to the place of beginning; (3) the southeast portion of said lot upon which house No. 476 Avenue A stands, namely, the portion of the lot which lies easterly of the east cement curb of the driveway thereon and southerly of the north edge of the walk heretofore described as running between the rear doors of the two houses herein referred to.

Said will is also construed as granting to said Helen DeRyke a perpetual easement of ingress to and egress from said east

garage unit from Avenue A over and upon the driveway on the lot upon which house No. 476 Avenue A stands, as said driveway is now located, and which easement may also be used for access to the rear of the lot upon which house No. 480 Avenue A stands from the portion of the driveway lying between the garage and the walk heretofore described running between the rear doors of the two houses. The easement is subject to the equal right of the respondent, Albert Woggon, to use said driveway as heretofore. The will is construed as granting to the respondent, Albert Woggon, the right to purchase the rest of the lot upon which house No. 476 Avenue A stands, subject to such easement in the driveway in favor of the respondent, Helen DeRyke.

Submit decree of construction accordingly.